UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Appellee, | : | |
| v. | : | CRIMINAL NO.  05-MJ-00649-AK |
| | : | |
| | : | Oral Argument: August 28, 2006 |
| CINDY SHEEHAN, | : | |
| | : | |
| Appellant. | : | |
| _____ | : | |

BRIEF FOR APPELLEE

COMES NOW, the United States of America, by and through the undersigned attorneys and hereby submits its brief in opposition to the Brief For Appellant (Appellant's Brief) filed by Cindy Sheehan on or about April 24, 2006.  In support thereof, the United States would respectfully show the following:

I. BACKGROUND

A.  Procedural Background

This is an appeal from a judgment of conviction for violating 36 C.F.R. § 7.96 (Demonstrating Without a Permit) entered by United States Magistrate Judge Alan Kay.  The trial was conducted on November 16 and November 17 of 2005.  The appellant, along with numerous other individuals who are not part of this appeal, was found guilty of violating 36 C.F.R. § 7.96 on September 26, 2005.

B.  Demonstration on September 26, 2005

The evidence at trial established that Richard Merryman worked in the permit office of the

National Park Service (NPS). As part of his responsibilities, Mr. Merryman oversees the process for issuing permits for use of various parks and public land in the national capital region. In the period leading up to September 26, 2005, Mr. Merryman received an application for a permit to allow people to demonstrate on the Ellipse and in Lafayette Square on September 26, 2005. This application was submitted by the Iraqi Pledge of Resistance (IPR). Mr. Merryman was in charge of overseeing the processing of the application submitted by the IPR permit.

During the course of meeting with representatives of the IPR to final the details of the permit, the application was amended at one point to include demonstrating on the White House sidewalk. Mr. Merryman explained that a permit was needed for any group in excess of 25 who wished to demonstrate on the White House sidewalk. But, the IPR subsequently requested that the permit not include the area of the sidewalk of the White House. Mr. Merryman explained that, as a result of the group's request to remove permission to demonstrate on the White House sidewalk, no group had requested or been granted a permit to demonstrate on the sidewalk.

On September 23, 2005, a permit was issued to the IPR to demonstrate only on the east side of Lafayette Park and the southeast quadrant of the Ellipse. Because the permit was issued without including the White House sidewalk, the NPS notified law enforcement that no permit had been issued for that area.

On September 26, 2005, officers with the United States Park Police (Park Police) were assigned to the area surrounding the White House sidewalk, the Ellipse and Lafayette Park. These officers included, but were not limited to, Louis Facciponti, Laura Johnson, Gary Fuller, Stephanie Clark, Holly Davis and Lieutenant Patrick Smith. These officers were assigned to be in the area early in the day and remain throughout the demonstration.

As the day progressed, the United States Park Police observed a large group of demonstrators standing and sitting together, and congregating on the White House sidewalk shortly after 1:30 p.m. The police described it as a large anti-war demonstration that had become quite loud. The demonstrators numbered in excess of twenty-five, and they were attracting a crowd of onlookers. The police observed that members of the group were carrying signs, yelling, chanting, and sitting on the sidewalk

Lieutenant Smith of the Park Police determined that the group was in violation of NPS regulations that prohibit demonstrating without a permit. Lieutenant Smith then issued warnings over an amplification device that the group was in violation of the regulation and subject to being arrested if they did not vacate the area. The warnings were issued every three to five minutes. There was a total of three warnings. The purpose of the intervals between warnings was to allow people to leave without being arrested.

The Park Police sealed the area in which the demonstrators were located with a combination of police tape and bicycle racks. The Park Police then arrested those individuals remaining in the sealed off area for demonstrating without a permit. The arrests began after Lieutenant Smith issued his final amplified warning.

Park Police Officer Holly Davis arrested the appellant, who was later identified as Cindy Sheehan. Officer Davis explained that some of the demonstrators refused to stand and had to be physically lifted from the sidewalk and carried to the police wagons by law enforcement officers. Officer Davis observed that the appellant was one of the demonstrators who refused to stand and had to be carried by two SWAT officers to the police wagon. The appellant was then processed by Officer Davis.

Following her non-jury trial, the appellant was found guilty of demonstrating without a permit on the White House sidewalk on September 26, 2005. The magistrate judge issued a written Judgment on December 7, 2005, setting forth his findings.

## II. ARGUMENT

The Appellant's Brief raises basically three issues on appeal. First, the NPS regulation governing the issuance of permits is unconstitutional because it imposes strict liability on demonstrators who lacked knowledge of whether a permit been issued by the NPS. Second, the evidence was insufficient to establish that the appellant was demonstrating without a permit within the meaning of the regulation. Third, the trial court failed to set forth specific findings as to appellant's guilt. As set forth more particularly below, appellant's arguments should be rejected. First, the appellant did not preserve the issue of whether the permit provision, which allegedly lacks a mens rea element, violated the First Amendment and, therefore, that argument is waived. Second, despite whatever position may have been taken at trial, to the extent that the Court believes it is necessary to infer a means rea element, the Judgment clearly reflects that the trial court considered appellant's mens rea and, thus, the regulation does not violate the First Amendment. Second, the record here provides an ample basis for the trier of fact to have found that appellant unlawfully demonstrated without a permit on the White House sidewalk. Finally, inasmuch as appellant failed to request specific findings pursuant to Rule 23(c) of the Federal Rules of Criminal Procedure during this non-jury trial, the trial court was not obliged to set forth any specific findings. Therefore, the Judgment should be affirmed.

A. Appellant Waived The First Amendment
   Challenge To The NPS Regulation By
   Failing To File A Pretrial Motion

Appellant has waived the facial challenge to the constitutionality of the NPS regulation on the grounds that it lacks of a mens rea element and, thus, violates the First Amendment. The waiver occurred due to the appellant's failure to raise it prior to trial. Indeed, Rule 12(b) of the Federal Rules of Criminal Procedure requires that certain issues to be raised prior to trial. Those issues include constitutional challenges. United States v. Drew, 200 F.3d 871, 876 (D.C. Cir. 2000)(Second and Fifth Amendment challenge waived if not made prior to trial); United States v. Badru, 97 F.3d 1471, 1475 (D.C. Cir. 1996)(facial constitutional challenge cannot be made for the first time on appeal); United States v. David, 96 F.3d 1477 (D.C. Cir. 1996)(commerce clause challenge waived because it was not made prior to trial), cert. denied, 519 U.S. 1136 (1997).[1] Because there is nothing in the record demonstrating that the appellant preserved her First Amendment argument, it is waived. Indeed, the appellant did not file a motion in writing or make one orally at trial challenging the constitutionality of the lack of a mens rea element in the permit provision of the NPS regulation. Therefore, the Court should reject this argument and affirm the conviction.

Although the federal rules provide for relief from a waiver where good cause is shown,[2] the appellant fails to make any such showing. In light of the fact that appellant's argument focuses on

---

[1] See also United States v. Weathers, 186 F.3d 948 (D.C. Cir. 1999)(double jeopardy challenge waived); United States v. Sobin, 56 F.3d 1423, 1427 (D.C. Cir. 1995)(waiving alleged violation of Miranda rights); United States v. Mangieri, 694 F.2d 1270 (D.C. 1982)(matters waived if not raised in motions to suppress).

[2] See Fed. R. Crim. Pro. 12(e).

the language of the regulation, there is no reason why this was not raised prior to trial, or at least during the trial. Although appellant preserved a claim that evidence of mens rea is needed to sustain a conviction by attempting to ask questions at trial about the knowledge of demonstrators regarding the existence of a permit, as well as the claim that such evidence is lacking here, the appellant did not make a First Amendment challenge prior to trial regarding the lack of a mens rea element.

B. The Conviction Should Be Affirmed
   Because Park Service's Regulation
   Does Not Violate The First Amendment

Appellant contends that the conviction should be reversed because the National Park Service's (NPS) regulation lacks a mens rea element and, thus, violates the First Amendment. Appellant's Brief, pp. 5-10. Even if the appellant had preserved this argument for appeal, the argument lacks force because the regulation, as applied in this case, can be read to include a mens rea element.[3] Indeed, the trial court expressly or implicitly considered the issue of mens rea in rejecting the appellant's contention that she was unaware of the fact that she was demonstrating without a permit. The trial court found that testimony to be lacking in credibility. Moreover, the regulation already includes a mens rea requirement insofar as the "demonstrating" element is

---

[3] The United States took the position at trial that it was unnecessary for the United States to establish the state of the appellant's knowledge regarding the permit. Courts are divided about whether a scienter element is needed for every element of an offense. Compare American-Arab Anti-Discrimination Committee v. City of Dearborn, 418 F.3d 600 (6th Cir. 2005)(scienter needed) and United States v. Johnson, 988 F. Supp. 920, 922-24 (W.D.N.C. 1997) (scienter not required for every element of Forest Service's regulation; regulation does not violate First Amendment), aff'd, 159 F.3d 892, 895 (4th Cir. 1998)(declining to address mens rea issue). But, for the reasons set forth in the body of this brief, the Court need not reach the issue of whether the regulation is a strict liability offense insofar as the permit is concerned. Indeed, the NPS' regulation has been held to be constitutional in this jurisdiction. Moreover, the record here demonstrates, and the magistrate judge implicitly found, that the appellant knew that she was violating the regulation when Lieutenant Smith issued the three warnings.

required. Further, the regulation, which is content neutral, has already been determined to constitutional as to time, manner and place. Thus, taken together, the record here demonstrates that regulation is constitutional and the appellant's First Amendment rights were not violated. Therefore, the conviction should be affirmed.

It is important to note that the regulation does, in fact, contain a mens rea element and, thus, is not a true strict liability offense. Specifically, the regulation defines "demonstrations" include:

> demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct which involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which has the effect, intent, or propensity to draw a crowd or onlookers. The term does not include casual park use by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers.

36 C.F.R. § 7.96(g)(1)(I). Despite the appellant's failure to address the actual language[4], an accurate reading of the regulation under which the appellant was prosecuted confirms that it does in fact incorporate a mens rea element. Indeed, the regulation contemplates that the demonstrator must intend for his or her actions to be of the sort that will attract a crowd or onlookers. Appellant wrongly argues that the regulation lacks "any" mens rea requirement. See e.g. Appellant's Brief, p. 8.[5] Thus, it is clear that the writer of the regulation contemplated a mens rea element to the offense of Demonstrating Without a Permit.

Appellant does not cite any authority for the proposition that the NPS regulation is invalid. The case law in this circuit is actually to the contrary. The NPS regulation has been reviewed several

---

[4] See Appellant's Brief, pp. 7 and 10. The brief repeatedly omits that portion of the regulation that expressly includes mens rea within the definition of "demonstrating."

[5] The regulation, in light of how it defines "demonstrations," expressly precludes culpability for the actions of tourists or casual users of the park areas.

times by our Circuit and determined that this regulation is constitutional in a number of contexts. See generally United States v. Cinca, supra, 56 F.3d at 1414, n.12 (rejecting as applied First Amendment challenge to NPS regulation; and collected cases); United States v. Musser, 873 F.2d 1513 (D.C. 1989) (regulation prohibiting unattended signs did not violate First Amendment); Quaker Action Group v. Morton, 516 F.2d 717, 728 (D.C. Cir. 1975)(NPS' permit system for use of National Park property near White House is constitutional).  Accordingly, the NPS' regulation, which is content neutral, has been determined to be constitutionally sound despite its effect on speech.  Thus, appellant's suggestion that any statute or regulation which even remotely impacts the right of free speech must be unconstitutional is simply wrong.  Appellant's Brief, pp. 5-7.  The NPS regulation, while no doubt impacting speech, has been determined to be constitutional.

Even if appellant were correct in her assertion that the regulation does not reflect a mens rea with respect to the issuance of a permit, this conclusion would not automatically lead to reversal for two reasons.  First, as appellant necessarily concedes, there are occasions when inferring a mens rea element is permitted, and there is ample basis for this Court to read a mens rea into the permit element for the NPS regulation.  Moreover, the Judgment in this case indicates that the trial court specifically considered the issue of the appellant's state of mind and determined that appellant possessed the requisite mens rea for violating the regulation.

1. Inferring Mens Rea

This Court is free, if needed to preserve the constitutionality of the regulation, to infer a mens rea element into the permit provision.  As appellant concedes at pages nine and ten of her brief, courts will often construe a regulation or statute, where possible, "to include broadly applicable scienter requirements, even where the statute by its terms does not contain them."  United States v.

X-Citement Video, Inc., 513 U.S. 64, 70 (1994). See also Staples v. United Staples, 511 U.S. 600 (1994).[6]  There is no reason why the Court should not do so here.

First, the appellant's brief misstates the language in the regulation.  Appellant's Brief, pp. 9-10.  Demonstrations are not limited to actions that have the effect or propensity to draw a crowd or onlookers.  Rather, as set forth earlier in this brief, the regulation contemplates demonstrations that are "intended" to draw a crowd or onlookers.  This language in the NPS' regulation distinguishes this case from those situations where inferring such an element would be contrary to clear congressional intent.  See Morrisette v. United States, 342 U.S. 246, 254 (1954).  This is not a case where the statute or regulation in question was purposefully drafted to exclude a scienter requirement.  Instead, a fair reading of the NPS regulation confirms that it was only intended to encompass intentional conduct that amount to demonstrating and, therefore, there is no reason why the Court cannot infer a similar element with regard to the permit.

Moreover, Appellant's Brief misquotes the regulation suggesting that the permit requirement

---

[6] Appellant's reliance on United States v. Taylor, 937 F.2d 676 (D.C. Cir. 1991) is misplaced. Appellant's Brief, p. 9.  There is nothing in Taylor suggesting that the principles articulated in United States v. X-Citement Video and United States v. Staples are somehow limited to situations where statutes and regulations are vague.  Indeed, the Taylor opinion does not address the holdings in these cases.  Similarly, the appellant's reliance American-Arab Anti-Discrimination Committee v. City of Dearborn, 418 F.3d 600 (6th Cir. 2005) is misplaced.  First, the ordinance at issue there does not appear to have been subjected to any previous judicial scrutiny.  In Dearborn, the defendant in the criminal matter, and who was the individual leading the walk, did not learn of the fact that a permit was lacking until the day after the march.  Id. at 604.  In contrast, appellant was warned three times by Lieutenant Smith that she, as well as the other defendants, were demonstrating in violation of the Park Service's regulation because they were demonstrating without a permit and were given fifteen minutes to leave the sidewalk.  Indeed, in Dearborn, the court also found that the 30 day advance notice requirement in seeking the permit was unneeded and an unconstitutional infringement on free speech.  In contrast to this deficiency, the NPS has been held to not to unconstitutionally infringe on speech with respect to the permit requirement procedure.

could be violated by demonstrating "along side" of a larger group or by being joined by onlookers. Appellant's Brief, p. 10. That is not what the regulation provides. Instead, the regulation states that demonstrations of twenty-five or fewer, may be held provided "that the group is not merely an extension of another group already availing itself of the 25-person maximum under this provision or will not unreasonably interfere with other demonstrations or special events." 36 C.F.R. § 7.96(g)(2)(I). Plainly, the regulation addresses the scenario where two groups of less than 25 are in fact related to each other and need to obtain a permit. It does not address, as suggested by appellant, two groups are coincidentally demonstrating next to each other and triggering the permit requirement. Thus, contrary to what is asserted by appellant, this portion of the regulation does not stand for the proposition that the regulation writer intended to create strict liability. Indeed, appellant cites no legislative history, or any provision within the regulation, expressly adopting a strict liability standard for the permit element. Therefore, appellant's reliance on this provision in the regulation is misplaced.

As demonstrated more fully herein, the trial court considered appellant's mens rea and, thus, this Court need not address the issue of whether the regulation is a strict liability offense insofar as the permit requirement is concerned. Nonetheless, in light of its language, this Court can infer that the regulation includes a requirement that the government prove that appellant was unlawfully demonstrating without a permit. Therefore, the conviction should be affirmed.

2. The Trial Court's Judgment

Appellant contends that there is no evidence in the record to support the conclusion that appellant had the requisite intent to be convicted. Appellant's Brief, p. 10. Appellant is wrong. The record here reflects that the demonstrators, including the appellant, were advised three times by

Lieutenant Smith of the United States Park Police that they were demonstrating without a permit in violation of Park Service regulations. These warnings were communicated to the appellant by way of an amplification device used by Lieutenant Smith. Put more directly, it was Lieutenant Smith who advised appellant, by way of a warning with an amplification device used to communicate with the demonstrators, that she was demonstrating without a permit. Appellant was then given fifteen minutes to leave the White House sidewalk and avoid being arrested. However, appellant elected to remain and continue demonstrating. The appellant's knowledge was a factual finding made by the trial court and is to be given all of the deference normally given to a fact finder. Thus, there is a basis in the record and the conviction should be affirmed.

In addressing the defense's contention at trial that they did not hear the warnings, on page 11 of the Judgment, the trial court stated,

> [t]he Defendants' final contention that they did not hear the warnings given by the police and were not told the reason for their arrest is patently not credible. The Defendants appeared to the Court to be sophisticated, educated and familiar with demonstrations. In fact one witness [the appellant] gave as her occupation that she was an activist. Both the police and the witnesses testifying on behalf of the Defendants acknowledged that there was a festive atmosphere during the demonstration. One of the testifying Defendants that she called to a friend who was on the other side of a barrier in the roadway of Pennsylvania Avenue and asked them to send over food and drinks for the demonstrators. The Court did not find the argument that the Defendants did not hear the warnings or that they did not know why they were being arrested to be credible.

In doing so, the trial court effectively made findings about the state of the appellant's state of mind and her credibility. Indeed, this finding by the trial court reflects that the appellant unlawfully demonstrated without a permit after she was warned by Lieutenant Smith of the Park Police on three different occasions. See generally United States v. Thomas, 864 F.2d 188, 198 (D.C. Cir. 1988)

(three verbal warnings from police put defendant on notice of camping restriction under 36 C.F.R. § 7.96). While the appellant correctly notes that the trial court indicated at different points during the trial that it believed that knowledge of the permit status was unnecessary, the trial court in fact focused on the appellant's scienter when it rendered its Judgment as to appellant's guilt. Whatever appellant's interpretation of the trial testimony may be, it is unavailing at this juncture. The standard of review requires that the evidence be construed and all reasonable inferences drawn in favor of the government. Thus, on this record and with these findings by the trial court, there clearly is a basis for a rational trier of fact to conclude that appellant intentional demonstrated without a permit. Therefore, it is permissible for this Court to infer mens rea with regard to the permit element in this offense.

C. The Conviction Should Be Affirmed Because There Was Sufficient Evidence Upon Which A Reasonable Trier Of Fact Could Find That <u>Appellant Was Demonstrating Without A Permit</u>

The Court should reject appellant's argument that there was insufficient evidence for the trier of fact to find that she was "demonstrating" without a permit within the meaning of the NPS regulation. In short, appellant asks this Court to second guess the trier of fact in this case. While the appellant contends that the evidence should have been viewed differently, these arguments wholly fail to demonstrate that there was no evidence upon which a reasonable trier of fact could have based its findings.

1. <u>Standard</u>

In reviewing the insufficiency arguments, this Court is to consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could have

(three verbal warnings from police put defendant on notice of camping restriction under 36 C.F.R. § 7.96). While the appellant correctly notes that the trial court indicated at different points during the trial that it believed that knowledge of the permit status was unnecessary, the trial court in fact focused on the appellant's scienter when it rendered its Judgment as to appellant's guilt. Whatever appellant's interpretation of the trial testimony may be, it is unavailing at this juncture. The standard of review requires that the evidence be construed and all reasonable inferences drawn in favor of the government. Thus, on this record and with these findings by the trial court, there clearly is a basis for a rational trier of fact to conclude that appellant intentional demonstrated without a permit. Therefore, it is permissible for this Court to infer mens rea with regard to the permit element in this offense.

C. The Conviction Should Be Affirmed Because There Was Sufficient Evidence Upon Which A Reasonable Trier Of Fact Could Find That <u>Appellant Was Demonstrating Without A Permit</u>

The Court should reject appellant's argument that there was insufficient evidence for the trier of fact to find that she was "demonstrating" without a permit within the meaning of the NPS regulation. In short, appellant asks this Court to second guess the trier of fact in this case. While the appellant contends that the evidence should have been viewed differently, these arguments wholly fail to demonstrate that there was no evidence upon which a reasonable trier of fact could have based its findings.

1. <u>Standard</u>

In reviewing the insufficiency arguments, this Court is to consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rationale trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'" United States v. Cinca, 56 F.3d 1409, 1413 (D.C. 1995)(applying 36 C.F.R. § 7.96 and quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  As the court noted in Cinca, this standard affords great deference to the trier of fact's role, drawing all reasonable inferences from the evidence in favor of the government, and allowing the trier of fact to assess the weight and credibility of the evidence and testimony.  Id.  It is only when no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt that an appellate court will reverse on sufficiency grounds.  United States v. Levi, 45 F.3d 453, 457 (D.C. Cir. 1995).  Moreover, the government's case may be entirely circumstantial and need not exclude every possible theory of innocence.  United States v. Bryant, 117 F.3d 1464 (D.C. Cir. 1997)(applying the same standard in reviewing non-jury trials), cert. denied, 118 S. Ct. 1510 (1998); United States v. McFarlane, 445 F.3d 29, 31 (4th Cir. 2006).  On appeal, conflicts in the testimony are to be resolved in favor the government.  United States v. Thomas, 864 F.2d, supra, at 192.  The reviewing court does not review the evidence anew.  United States v. Wynn, 61 F.3d 921 (D.C. Cir. 1995).  Applying these principles to appellant's arguments, it is clear that the conviction must be affirmed.[7]

---

[7] Appellant's reliance on Barham v. Ramsey, 434 F.3d 565 (D.C. Cir. 2006) is misplaced.  Appellant's Brief, pp. 12, 19-20.  In Barham, the appellate court was faced with claims of qualified immunity in a class action brought pursuant to 42 U.S.C. § 1983 arising out of the violation of the arrestees' Fourth Amendment rights in connection with a District of Columbia law.  That is a much different question from whether the NPS' regulation violates the First Amendment.  More importantly, however, is that the facts in Barham are different from the facts here.  Here, the officers, and in particular Officer Davis, testified that appellant was demonstrating without a permit after Lieutenant Smith issued three warnings.  While appellant may disagree with the conclusion reached by the trial court, in light of the standard to be applied on appeal and the evidence in the record it is clear that this case is wholly different from Barham.

2. <u>Demonstrating</u>

The appellant's first argument is that the evidence was not sufficient for a rational trier of fact to find that she was "demonstrating" within the meaning of the National Park Service's regulation. <u>See</u> Appellant's Brief, pp. 10-17. In support, the appellant argues that (a) appellant was only "sitting" on the White House sidewalk, (b) appellant's expressed agreement with the demonstrators does not amount to demonstrating, and (c) evidence regarding the actions of the other demonstrators does not support appellant's conviction. <u>Id</u>. Appellant's arguments miss the mark. Indeed, each argument asks to the Court to second guess the trier of fact's assessment of the credibility, weight, and as well as the reasonable inferences that were drawn by the trier of fact. However, under the standard articulated by the appellate court, the record here provides an ample basis for the trier of fact to conclude that appellant was demonstrating within the meaning of the regulation.

By joining and then sitting with a loud group of people, who were demonstrating against the war in Iraq and drawing a crowd of onlookers by carrying signs, yelling, chanting, and refusing to leave the area when warned by Lieutenant Smith; a rational trier of fact could conclude that appellant was demonstrating. Indeed, the National Park Service's regulation defines "demonstration" as including,

> demonstration, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct which involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd of onlookers.

36 C.F.R. § 7.96(g)(1)(I). A rational trier of fact could find that appellant "demonstrated" when she

participated in the march and demonstration with the IPR.[8] Indeed, appellant admitted at trial that she "wanted to joined in solidarity with the people present, hundreds of people present and millions of people around the country, to ask for a redress of my wrongs to the President of the United States." Testimony of Cindy Sheehan on November 17, 2005, pp. 98-112. On September 26, 2005, appellant arrived at the White House after she "started with the march that marched to the White House gate." Id. After she arrived at the gate, appellant stated that "[she was] part of the – we were taking our reasons to the President . . . ." Id. Having been told at the gate that nobody from the White House would meet with her, appellant and other members of Gold Star Families for Peace walked about 15 or 20 feet and sat down on the White House sidewalk. Id. The appellant was there for approximately an hour before she was arrested and carried from the scene. Id. As the police officers testified, there were hundreds of people in this area standing, sitting, carrying signs, yelling and chanting. The appellant described it as a very noisy environment and that there were a couple of hundred on her side of the barricade. Id. Although appellant contended that she did not break the law, appellant then conceded how they had to carry her to the wagon. Id. Indeed, as the trial court stated in its Judgment, appellant was a "visible presence" during the demonstration. Officer Davis specifically described how the appellant would not stand up when the police began to make arrests

---

[8] It strains reason for the appellant to take the position that she was not demonstrating in light of the fact that appellant testified that she: (1) is a fulltime peace activist, a speaker, and writer who has submitted numerous articles to editors and articles that have been circulated on the Internet; (2) has on many occasions attempted to petition the government for redress for the death of her son; (3) has gone to the President's ranch in Texas to seek redress; (4) help start Gold Star Families for Peace; (4) went to the White House on September 26, 2005 in the hope of stopping the war in Iraq; (5) wanted to "join" in solidarity the hundreds of others who were seeking redress on September 26, 2005; (6) she started the day by marching with the others to the White House gate; (7) the people surrounding her were demonstrating against the war; and (8) was expressing her views on the war as well. In light of the appellant's testimony at trial, the position in Appellant's Brief is without a basis in the record.

and that the appellant had to be carried to the wagon. Officer Davis' description of the appellant's conduct similarly puts it in context and confirms that a reasonable trier of fact could find that the appellant was demonstrating.

After weighing the testimony and assessing the credibility of the various officers, as well as the appellant herself, a reasonable trier of fact could find, based upon this record, that the appellant had joined in a march on the White House with a group demonstrating against the war, attempted to present a petition to a representative of the White House, and participated – by engaging in a sit-in – as hundreds of others stood around, sat around, yelled, chanted, and carried signs and otherwise demonstrated against the war. See e.,g., United States v. Cinca, supra 56 F.3d at 1413, n. 10 (describing the demonstrators' sit-in as "just sitting). While the appellant may have "sitting" during the demonstration, her actions, in the context of this record, are sufficient for a reasonable trier of fact to find that she "demonstrating" within the meaning of the regulation.

Appellant's argument that her agreement with the other demonstrators does not make her a demonstrator is equally unavailing. Appellant's Brief, pp. 15-17. Of course, the mere agreement does not make appellant a demonstrator. By the same token, however, it is relevant and the trier of fact is permitted to draw reasonable inferences from that particular fact. Indeed, the facts on this record distinguish appellant from those hypotheticals in her brief. Put somewhat differently, a reasonable trier of fact could infer from the views expressed by appellant and those of the other demonstrators on September 26, 2005, as well as her actions, and reasonably conclude that the appellant was demonstrating. The appellant's words do not constitute being part of a demonstration. But those words confirm what her actions also denote, that by participating with this group by way of sitting-in, the appellant was demonstrating and expression her opposition to the war in Iraq. The

appellant's sit-in – just like the sit-in Cinca – is the type of conduct contemplated by the regulation. Therefore, the appellant was clearly demonstrating within the meaning of the regulation.

Lastly, the appellant suggests that the conviction should be reversed because a permit had been issued at one point for the White House sidewalk. This argument ignores the fact that there was testimony and documentary evidence that the permit that was issued did not include the White House sidewalk. This occurred not because a NPS official revoked the permit. Rather, it was simply because it is what the permit applicant sought from the NPS. By reviewing the evidence, and drawing all reasonable inferences, in favor of the government, it is clear that there was no permit in place on September 26, 2005 for the White House sidewalk.

In sum, the evidence introduced in this case, including the direct and circumstantial evidence, supports the trial court's finding that the appellant was demonstrating without a permit. Indeed, each piece of evidence need not be conclusive as to a particular element of the offense. Rather, it is simply a link in a chain of evidence that leads to a conclusion. See e.g. United States v. Foster, 986 F.2d 541, 545 (D.C. Cir. 1993); F.R.E. 401, Advisory Committee Notes ("A brick is not a wall."). Here, despite appellant's argument that the evidence should be, or could have been, interpreted differently by the trier of fact, there is ample basis upon which a rationale trier of fact could have found each and every element of the offense of Demonstrating Without a Permit.

C. The Conviction Should Be Affirmed
   Because Appellant Failed To Request
   Specific Findings Under Rule 23(c)

The Appellant's Brief contends that the trial court erred by failing to make "particularized findings" regarding appellant's guilt. See Appellant's Brief, pp. 10-13. The Court should reject this argument because it overlooks the fact that this was a non-jury trial before a magistrate judge and,

unless the appellant requested specific findings, the magistrate judge was under no obligation to provide any particularized findings and was simply to render a finding that the appellant was guilty or not guilty. Here, the appellant did not make any request for specific findings. Further, even if the trial court had received such a request, the trial court's eleven page Judgment is sufficient. Therefore, the appellant's argument should be rejected.

Appellant failed to exercise her right to ask for specific findings regarding her guilt or innocense. Rule 23(c) of the Federal Rules of Criminal Procedure governs this issue in non-jury trials and it provides:

> [i]n a case tried without a jury, the court must find the defendant guilty or not guilty. If a party requests before the finding of guilty or not guilty, the court must state its specific findings of fact in open court or in a written decision or opinion.

See also United States v. Alameh, 341 F.3d 167 (2d Cir 2003); United States v. Andreen, 628 F.2d 1236 (9th Cir. 1980). First, the appellant's reliance on cases discussing jury instructions and the need to consider each defendant's guilt on an individualized basis are inapposite. This case involved a non-jury trial before a United States magistrate judge, and Appellant's Brief completely fails to cite to any reference in the record where the appellant requested the trial court to make specific findings of fact. Thus, the appellant waived any specific findings. United States v. Musser, 873 F.2d 1513, 1519 (D.C. Cir. 1989)(specific findings were waived in non-jury trial involving First Amendment challenge to 36 C.F.R. § 7.96). Appellant failed to comply with Rule 23(c) and this argument should be rejected.[9]

---

[9] Here, even if appellant had made such a request, the Judgment was sufficient. The magistrate judge wrote an eleven page opinion following the non-jury trial detailing its findings of fact, with references to the documentary evidence and assessments of credibility. It then rendered a finding of guilt. This is clearly permissible under Rule 23(c). "'On appeal, findings

III. CONCLUSION

WHEREFORE, upon the foregoing authorities, and upon the entire record herein, the United States respectfully requests that the Judgment be affirmed.

        Respectfully,
        KENNETH L. WAINSTEIN
        United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010

---

will be implied in support of the judgment if the evidence, viewed in a light most favorable to the government warrants them." United States v. Musser, 873 F.2d at 1519, quoting United States v. Ochoa, 526 F.2d 1278, 282, n.6 (5th Cir. 1976). Thus, the magistrate judge's opinion certainly fulfills the trial court's obligation in this case. Therefore, this argument should be rejected and the conviction affirmed.

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a true and correct copy of the foregoing Brief for Appellee was caused to be served via United States Mail, postage prepaid, upon counsel of record for the defendants, this 1st day of August, 2006, upon:

David S. Cohen
Jennifer M. O'Connor
2445 M Street, N.W.
Washington, D.C. 20037

                                              MICHAEL T. TRUSCOTT