# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
UNITED STATES OF AMERICA,                 )
                                          )
            v.                            )        No. 05-MJ-649-AK
                                          )
CINDY SHEEHAN,                            )
                                          )
                                          )
            Appellant.                    )
_____     )


## REPLY BRIEF

David S. Cohen (D.C. Bar No. 426683)
Jennifer M. O'Connor (D.C. Bar No. 460352)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
(202) 663-6363 (facsimile)

*Counsel for Appellant Cindy Sheehan*

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................................... ii

Table of Attachments ............................................................................................ iv

Argument................................................................................................................ 1

I.      The Evidence Was Insufficient To Show Ms. Sheehan Was "Demonstrating"
        Within The Meaning Of The Regulation.......................................................... 1

        A.      The Government Cites No Evidence That Ms. Sheehan Herself
                Engaged In Any Specific Conduct That Constitutes "Demonstrating." ............... 3

        B.      The Government Cannot Satisfy Its Burden By Arguing That
                Ms. Sheehan Is A "Fulltime Peace Activist" Who Opposes The War.................. 7

II.     The Evidence Was Insufficient to Show That Ms. Sheehan Demonstrated
        "Without A Permit." ....................................................................................... 9

III.    The NPS Permit Requirement Is Unconstitutional.......................................... 11

        A.      The Regulation Cannot Be Construed To Include A *Mens Rea*
                Requirement....................................................................................... 11

        B.      The Government Fails To Refute That The Absence Of A *Mens Rea*
                Element Renders The NPS Permit Regulation Unconstitutional.......................... 14

        C.      The Record Does Not Support The Government's Claim That
                The Trial Court Found That Ms. Sheehan Knew There Was No Permit.............. 16

        D.      The Constitutional Challenge To The Regulation Was Properly Preserved......... 17

Conclusion .......................................................................................................... 19

# TABLE OF AUTHORITIES

Pages

## Cases

*American-Arab Anti-Discrimination Comm. v. City of Dearborn*,
    418 F.3d 600 (6th Cir. 2005) ............................................................... 11, 14, 15, 19

*Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006) ...................................... 6-7

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ..................... 9, 15, 16

*Kotteakos v. United States*, 328 U.S. 750 (1946) .......................................... 7

*Liparota v. United States*, 471 U.S. 419 (1985) ........................................... 13

*Quaker Action Group v. Morton*, 516 F.2d 717 (D.C. Cir. 1975) ................... 9, 14

*Smith v. California*, 361 U.S. 147 (1959) .................................................... 11, 15

*Staples v. United States*, 511 U.S. 600 (1994) ............................................ 13

*United States v. Akpan*, 407 F.3d 360  (5th Cir. 2005) ................................ 19

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) ................................ 2

*United States v. Andreen*, 628 F.2d 1236 (9th Cir. 1980) ........................... 2

*United States v. Badru*, 97 F.3d 1471 (D.C. Cir. 1996) ............................... 17

*United States v. Bailey*, 444 U.S. 394 (1980) ............................................. 13

*United States v. Cinca*, 56 F.3d 1409 (D.C. Cir. 1995) ............................... 4, 5, 14

*United States v. David*, 96 F.3d 1477 (D.C. Cir. 1996) ............................... 17

*United States v. Drew*, 200 F.3d 871 (D.C. Cir. 2000) ................................ 17

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) .......................... 5

*United States v. Johnson*, 998 F. Supp. 920 (W.D.N.C. 1997) .................... 15

*United States v. Mangieri*, 694 F.2d 1270 (D.C. Cir. 1982) ........................ 17

*United States v. Milton*, 8 F.3d 39 (D.C. Cir. 1993) .................................. 19

**TABLE OF AUTHORITIES (cont.)**

Pages

*United States v. Musser*, 873 F.2d 1513 (D.C. Cir. 1989) ...................................................... 2, 14

*United States v. Nofziger*, 878 F.2d 442 (D.C. Cir. 1989) .......................................................... 13

*United States v. Purvis*, 21 F.3d 1128 (D.C. Cir. 1994) ............................................................. 19

*United States v. Sobin*, 56 F.3d 1423 (D.C. Cir. 1995) ............................................................... 17

*United States v. Taylor*, 937 F.2d 676 (D.C. Cir. 1991) ............................................................. 13

*United States v. Weathers*, 186 F.3d 948 (D.C. Cir. 1999) ........................................................ 17

*Weil v. Seltzer*, 873 F.2d 1453 (D.C. Cir. 1989) ......................................................................... 8

*Zafiro v. United States*, 506 U.S. 534 (1993) .............................................................................. 5

**Rules and Regulatory Provisions**

36 C.F.R. § 7.96(g)(1)(i) .................................................................................... 2, 4, 9, 12

36 C.F.R. § 7.96(g)(2) ............................................................................................... 17

36 C.F.R. § 7.96(g)(2)(i) ........................................................................................... 13

36 C.F.R. § 7.96(g)(3) ............................................................................................ 9, 10

36 C.F.R. § 7.96(g)(4) ............................................................................................... 10

36 C.F.R. § 7.96(g)(5) ............................................................................................... 10

36 C.F.R. § 7.96(g)(6) ............................................................................................... 10

Fed. R. Crim. P. 12(b)(3) .......................................................................................... 17

Fed. R. Crim. P. 23 .................................................................................................... 2

Fed. R. Evid. 404(b) ................................................................................................... 8

Fed. R. Evid. 406 ........................................................................................................ 8

**Additional Sources**

1A Wigmore, Evidence § 192 (Tillers rev. 1983) ........................................................ 8

## TABLE OF ATTACHMENTS

Attachment 1          Additional Excepts of Trial Transcript, November 16, 2005

Attachment 2          Additional Excerpts of Trial Transcript, November 17, 2005

Attachment 3          Excerpt of Trial Transcript before Magistrate Judge Robinson, *United States v. Martin*, Nos. P0546993, *et al.* (D.D.C. April 19, 2006)

Appellant Cindy Sheehan respectfully submits this Reply Brief in response to the Brief for Appellee.

## ARGUMENT

The Government's brief reflects a fundamental failure by the Government to appreciate its burden of proving Ms. Sheehan's guilt with evidence of her own conduct at the time of her arrest. Instead, the Government defends the judgment below by pointing to Ms. Sheehan's views, rather than to her conduct; by pointing to the acts of others, rather than to her own acts; and by pointing to her status as a prominent peace activist and to acts she has taken on other occasions, rather than to her conduct on the occasion in question. The Government's brief similarly fails to answer Ms. Sheehan's basic claim that the absence of a *mens rea* element in the NPS permit system violates the First Amendment, instead asking this Court to infer a *mens rea* requirement where none exists. For the reasons stated here and in her opening brief, Ms. Sheehan's conviction should be reversed.

**I.    The Evidence Was Insufficient To Show Ms. Sheehan Was "Demonstrating" Within The Meaning Of The Regulation.**

As Ms. Sheehan showed in her opening brief, the Government failed to introduce at trial any evidence that she herself was engaged in any conduct on the White House sidewalk on the day of her arrest that amounts to "demonstrating" as that term is defined in the NPS regulation. *See* Br. for Appellant 10-21. According to the trial transcript and evidence, the only thing Ms. Sheehan did on the White House sidewalk prior to her arrest was "sit." Not sit and chant, not sit and hold a sign, not sit and pray—just "sit." But, even if you are Cindy Sheehan, the definition of "demonstration" in the NPS regulation requires more—the mere act of sitting does not fall within the meaning of "demonstrat[ing], picketing, speechmaking, marching, holding vigils or religious services and all *other like forms of conduct* which involve the communication or

1

expression of views or grievances . . . which has the effect, intent or propensity to draw a crowd or onlookers."  36 C.F.R. § 7.96(g)(1)(i) (emphasis added).

The Government's startling response to this argument is that other defendants were demonstrating and "the need to consider each defendant's guilt on an individualized basis [is] inapposite."  Br. for Appellee 18.  The Government does not dispute that a person's physical presence at the scene of a demonstration without more does not make that person a demonstrator. The Government cites no evidence in the trial record—and there is none—that Ms. Sheehan herself did any specific act on the White House sidewalk other than "sit."  Instead, the Government invites this Court to affirm Ms. Sheehan's conviction based only on who she is, how she views the Iraq War, what she has done on other occasions, in other places, to express that view, and what other people around her were doing prior to her arrest.  At each step of its argument, the Government fails to acknowledge the burden it bears in every criminal trial—no matter the identity of the defendant—to prove each element of the offense beyond a reasonable doubt as to each individual defendant.  Because the Government did not meet that burden here, Ms. Sheehan's conviction must be reversed.[1]

---

[1] The Government argues that the analysis of the sufficiency of the evidence is somehow controlled by whether the Magistrate Judge had an obligation under Rule 23 of the Federal Rules of Criminal Procedure to make specific findings of fact in support of his judgment.  Br. for Appellee 17-18.  It is not.  Ms. Sheehan never raised any claim of error under Rule 23, and, as even the Government's own authorities make clear, whether the trial court has satisfied its factfinding obligations under Rule 23 is a separate inquiry from the question whether the Government has met its burden of proof as to each defendant.  *See, e.g.*, *United States v. Alameh*, 341 F.3d 167, 175-76 (2d Cir. 2003) (conducting separate analyses into the sufficiency of the evidence and the application of Rule 23); *United States v. Musser*, 873 F.2d 1513, 1518-19 (D.C. Cir. 1989) (same): *United States v. Andreen*, 628 F.2d 1236, 1249-50 (9th Cir. 1980) (same).

**A.    The Government Cites No Evidence That Ms. Sheehan Herself Engaged In Any Specific Conduct That Constitutes "Demonstrating."**

In several instances in its brief, the Government asserts that the evidence in the trial record shows that Ms. Sheehan "demonstrated" on the White House sidewalk on the day of her arrest.  Notably, and oddly, the Government provides no citations whatsoever to the record to support these assertions, an oversight that pervades the Government's brief and underscores the lack of evidentiary support for many of the Government's factual assertions.  The reason for that omission here is simple:  there is nothing in the record to cite.  For example:

- The Government says that Officer Davis testified that Ms. Sheehan was "one of the *demonstrators*" who was arrested and carried away from the White House sidewalk. Br. for Appellee 3 (emphasis added).  In fact, Officer Davis never identified or referred to Ms. Sheehan as a "demonstrator."  Tr. 149-50, Nov. 16, 2005.[2]

- The Government asserts that "the officers, and in particular Officer Davis, testified that appellant was *demonstrating* without a permit after Lieutenant Smith issued three warnings."  Br. for Appellee 13 n.7 (emphasis added).  In fact, the transcript shows that (1) Officer Davis gave no such testimony, but instead said only that she saw Ms. Sheehan "sitting" on the White House sidewalk after the Park Police issued the warnings, Tr. 149-50, Nov. 16, 2005, and (2) no other officer gave any testimony at all regarding Ms. Sheehan's actions.  *See id.* at 49-83, 87-116, 151-165.

- The Government asserts that Ms. Sheehan "participated in the march and demonstration with the [Iraq Pledge of Resistance.]"  Br. for Appellee 15.  Again, the Government provides no citation to support this claim, and in fact, the transcript shows (1) the only "march" that took place occurred earlier in the day, outside the area governed by the NPS regulation, Tr. 100, Nov. 17, 2005, and (2) Ms. Sheehan came to the White House with four other members of Gold Star Families for Peace, *not* the Iraq Pledge of Resistance, *id.*

- The Government asserts that the Magistrate Judge made a finding that "appellant was a 'visible presence' during the demonstration."  Br. for Appellee 15.  In fact, the Magistrate Judge said nothing about Ms. Sheehan specifically and found only that the undifferentiated group of people on the sidewalk collectively served as a "visible presence."  Judgment at 9.

---

[2] Contrary to the Government's bootstrapping efforts, whether Ms. Sheehan cooperated with her arresters is not evidence of her conduct prior to arrest.  It may be evidence of resistance to arrest – but she was not charged with that offense.

Despite these mischaracterizations, the Government ultimately appears to concede that Ms. Sheehan was only "sitting" during the demonstration.  Br. for Appellee 16-17.  This concession is mandated in light of the evidence in the transcript, which shows only that Ms. Sheehan went to the White House to request a meeting with the President, and that when her request was denied, she walked to the White House sidewalk and "sat" until she was arrested. Tr. 100-04, Nov. 17, 2005.  As Ms. Sheehan argued in her opening brief, her passive act of sitting does not constitute "demonstrating" under the NPS regulation because it is not a "like form[ ] of conduct" comparable to "demonstrat[ing], picketing, speechmaking, marching, [or] holding vigils or religious services."  36 C.F.R. § 7.96(g)(1)(i); Br. for Appellant 14.

The Government nevertheless suggests that "sitting" alone constitutes "demonstrating" under the D.C. Circuit's decision in *United States v. Cinca*, 56 F.3d 1409 (D.C. Cir. 1995).  As the Government describes it, the defendant in *Cinca* was convicted under the NPS regulation for "just sitting."  Br. for Appellee at 16; *see also id.* at 17 (describing *Cinca* as involving a "sit-in"). But the D.C. Circuit's opinion in *Cinca* could not be clearer that the defendant not only sat on the White House sidewalk, but also "marched and prayed in front of the White House," "chanted protests with the group" he had joined, and "marched up and down the sidewalk then knelt and prayed in protest."  56 F.3d at 1410, 1412.  Indeed, the defendant in *Cinca* did not even dispute that he was demonstrating.  *Id.* at 1410, 1413.  The Government thus gains no support from *Cinca* for its suggestion that the mere act of sitting constitutes demonstrating.

If anything, *Cinca* supports Ms. Sheehan's claims, by modeling the type of evidence the Government should have submitted, if it could, to prove Ms. Sheehan's guilt—that is, evidence documenting specific acts constituting "picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct" on the White House sidewalk prior to her

4

arrest.  By failing to create the type of record submitted in *Cinca*, the Government failed to meet its burden of proof in this case.  Indeed, in a similar case arising out of a demonstration that took place on the White House sidewalk in October 2005, Magistrate Judge Robinson granted the defendants' motion for acquittal of the charge of demonstrating without a permit because, just as in this case, the Government failed to present individualized evidence that the particular defendants had violated the NPS regulations.  *See* Trial Tr., *United States v. Martin*, Nos. P0546993, *et al.*, at 72-78 (D.D.C. Apr. 19, 2006) (attachment 3).  While the Government's evidence may have supported "speculation" that the defendants demonstrated, Magistrate Judge Robinson properly recognized that such speculation could not substitute for specific, individualized evidence of each defendant's guilt.  *Id.* at 75-76.  The same result is required here.

The Government attempts to compensate for the insufficiency of the evidence by pointing to evidence of what other people were doing on the day of Ms. Sheehan's arrest.  *See, e.g.*, Br. for Appellee 16 (noting that Ms. Sheehan sat on the sidewalk while "*hundreds of others* stood around, sat around, yelled, chanted, and carried signs and otherwise demonstrated against the war" (emphasis added)); *id.* at 15 n.8 (arguing that Ms. Sheehan must have been demonstrating because, among other things, "the people surrounding her were demonstrating").  In advancing this theory of guilt by association, the Government once again fails to appreciate its burden to prove the guilt of each defendant individually, based on evidence of that defendant's own conduct.  *See Zafiro v. United States*, 506 U.S. 534, 541 (1993); *United States v. Haldeman*, 559 F.2d 31, 72 (D.C. Cir. 1976).  Indeed, the Government instead advances the remarkable assertion that "the need to consider each defendant's guilt on an individualized basis [is] inapposite."  Br. for Appellee 18.  This Court should not approve that misconception.

As Ms. Sheehan showed in her opening brief, the D.C. Circuit recently made clear that the police may not attribute guilt to an "undifferentiated mass of people" on the basis of evidence that some unspecified individuals in that group were engaged in unlawful conduct.  *See Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006); *see also* Br. for Appellant 19-20.  In this case, as in *Barham*, the Government failed to introduce individualized evidence of criminal conduct.  And just as the Government could not justify the arrests of alleged demonstrators without individualized evidence in *Barham*, so too here it cannot prove a defendant's ultimate guilt without individualized evidence of that defendant's own conduct.

The Government's minimal attempts to distinguish *Barham* fail.  The Government first contends that the issue in *Barham*—whether the police made arrests without sufficient probable cause—"is a much different question from whether the NPS regulation violates the First Amendment."  Br. for Appellee 13 n.7.  That is undoubtedly so, but the point is irrelevant, for Ms. Sheehan relies on *Barham* not to support her First Amendment claim, but to refute the Government's improper attempt to convict her on the basis of generalized testimony about the actions of a group.  Br. for Appellant 19-20.  The Government also purports to make out a factual distinction between the instant case and *Barham*, namely, that "the officers, and in particular Officer Davis, testified that appellant was demonstrating without a permit after Lieutenant Smith issued three warnings."  Br. for Appellee 13 n.7.  As has been shown, *supra* at 3, the record does not support this statement.  And while the police in *Barham* issued no warnings prior to the arrests, this is a distinction without a difference.  Ms. Sheehan's physical presence on the White House sidewalk after the issuance of the warnings in this case—even assuming she heard the warnings—does not constitute evidence that she was "demonstrating" prior to the warnings.  Under *Barham*, therefore, the Government may not premise the guilt of

one particular defendant on the theory that other, unidentified individuals in an "undifferentiated

mass of people" were engaged in unlawful conduct.  Such evidence is insufficient to satisfy the

Supreme Court's admonition that a defendant's guilt is an "individual and personal" matter, not a

"matter of mass application."  *Kotteakos v. United States*, 328 U.S. 750, 772 (1946).

> **B.    The Government Cannot Satisfy Its Burden By Arguing That Ms. Sheehan Is A "Fulltime Peace Activist" Who Opposes The War.**

In a further effort to make up for the absence of record evidence that Ms. Sheehan herself

participated in any specific acts of "demonstrating" within the meaning of the NPS regulation,

the Government invites this Court to assume that Ms. Sheehan *must* have been demonstrating on

the White House sidewalk at the time of her arrest because, among other things,

- She is a "fulltime peace activist, a speaker, and writer who has submitted numerous articles to editors and articles that have been circulated on the Internet";

- She "has on many occasions attempted to petition the government for redress for the death of her son";

- She "has gone to the President's ranch in Texas to seek redress"; and

- She "help[ed] start Gold Star Families for Peace."

Br. for Appellee 15 n.8.

These facts say nothing about the events on the White House sidewalk on the day of Ms.

Sheehan's arrest, and they are plainly insufficient to show that Ms. Sheehan's specific conduct

on the White House sidewalk that day amounted to "demonstrating."  Moreover, while defense

counsel elicited this evidence at trial simply by way of introduction to Ms. Sheehan's testimony,

the Government now seeks to use it for impermissible purposes.  Other than in specific

exceptional circumstances, the Federal Rules of Evidence prohibit the Government from using

evidence of a defendant's character, reputation, or other acts for the purpose of proving that the

defendant committed a particular act on a particular occasion.[3]  Indeed, it "has long been

accepted in our law" that "the doing of one act is in itself no evidence that the same or a like act

was again done by the same person."  1A Wigmore, Evidence § 192 (Tillers rev. 1983).  Whether

Ms. Sheehan is a peace activist, whether she has taken her antiwar message to the President's

ranch in Texas on other occasions, and even if she participated in a "march" earlier on the day of

her arrest at a different location, the Government cannot rely on these facts to show that she in

fact "demonstrated" on the White House sidewalk on the particular occasion of her arrest.[4]

        Nor does Ms. Sheehan's opposition to the Iraq War prove her guilt.  The Government

concedes, as it must, that Ms. Sheehan's "mere agreement" with the views expressed by those

who were demonstrating on the White House sidewalk "does not make [her] a demonstrator."

Br. for Appellee 16.  The Government nevertheless argues that a rational trier of fact could infer

that Ms. Sheehan must have been "demonstrating" because she shared the antiwar views of

others who were demonstrating.  *Id.* at 15-16 & n.8.[5]  The necessary implication is that if two

---

[3] Under Federal Rule of Evidence 404(b), evidence of a defendant's other acts is inadmissible for
the purpose of proving that the defendant acted in conformity with his character on the occasion
in question.  Nor would the facts cited by the Government be admissible as habit evidence under
Federal Rule of Evidence 406.  *See Weil v. Seltzer*, 873 F.2d 1453, 1460 (D.C. Cir. 1989)
(describing habit as nonvolitional activity that occurs with invariable regularity and emphasizing
the reflexive, instinctive quality of habits).  The Government makes no attempt to show that any
exception to these general rules is met in this case.

[4] Ms. Sheehan's uncontroverted testimony makes clear that she joined with others in "marching"
only until they reached the White House gate, and thereafter did nothing more than sit on the
White House sidewalk.  *See* Tr. 100-104, Nov. 17, 2005.  There is no evidence that Ms. Sheehan
marched on the White House sidewalk, within the area covered by the NPS regulation.

[5] The Government particularly draws attention to the fact that Ms. Sheehan "wanted to join[ ] in
solidarity with the people present" and with the "millions of people around the country" who
shared her views about the illegitimacy of the Iraq War, Br. for Appellee 15 & n.8, and that she
was "expressing her views on the war" on the day of her arrest, just as she had done on previous
occasions by writing letters to the editor and articles about the war, petitioning the government
for redress, and helping to start Gold Star Families for Peace, *id.* at 15 n.8.

people are observed sitting on the White House sidewalk during an antiwar demonstration and remaining there after the issuance of warnings to disperse, and if one of those people opposes the war while the other supports it, a rational trier of fact could conclude that the first was "demonstrating" in violation of the regulation while the second was not, even though their conduct was exactly the same. Such a conclusion would be plainly unconstitutional.

As Ms. Sheehan argued in her opening brief, the mere expression of views does not amount to "demonstrating" when it is unaccompanied by actual conduct similar to the forms of conduct enumerated in the NPS regulation. Br. for Appellant 15-16. With good reason, the NPS regulation defines a "demonstration" according to the participants' conduct, not according to their views. *See* 36 C.F.R. § 7.96(g)(1)(i). That approach is necessary in light of the important First Amendment principles at stake in any permit scheme. *See, e.g.*, *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Quaker Action Group v. Morton*, 516 F.2d 717, 728 (D.C. Cir. 1975). Yet the inevitable result of the Government's argument is to define "demonstrating" in part according to the content or views of a person's speech. Such an outcome is foreclosed by the text of the regulation and the constitutional concerns it reflects.

The Government has thus failed to meet its burden of proof that Ms. Sheehan was "demonstrating" within the meaning of the regulation, and her conviction should be reversed.

## II.     The Evidence Was Insufficient To Show That Ms. Sheehan Demonstrated "Without a Permit."

The Government does not dispute, as indeed it cannot, that an application for a permit to demonstrate at the White House is deemed granted if not denied within 24 hours of receipt. 36 C.F.R. § 7.96(g)(3). And the Government does not (and cannot) dispute that once a permit has been deemed granted, it can only be revoked in writing and upon a specific ground for which an application would be subject to denial in the first instance. *Id.* ("[W]here a permit has been

9

granted, *or is deemed to have been granted pursuant to this subsection*, the [NPS] may revoke

that permit pursuant to paragraph (g)(6) of this section." (emphasis added)); *id.* § 7.96(g)(6)

(requiring revocations to be made in writing, with the approval of the NPS Regional Director,

and based on a ground for which an application would be subject to denial under § 7.96(g)(4) or

(5)).  The regulations provide for no exception to these requirements.

Consistent with 36 C.F.R. § 7.96(g)(3), the Government's own witness, Richard

Merryman of NPS, testified that a permit to demonstrate on the White House sidewalk was

deemed issued 24 hours after the submission of the application by the Iraq Pledge of Resistance,

Tr. 16, Nov. 17, 2005; *see also id.* at 11.  Nevertheless, the Government inexplicably contends—

again, without any citation to the record—that "no group had requested or been granted a permit

to demonstrate on the sidewalk."  Br. for Appellee 2.  Under the regulation, the permit, once

deemed granted as described by Merryman, could be revoked only in a manner consistent with

§7.96(g)(6).  Yet the Government offers no argument as to how or why the subsequently issued

written permit, which did not include the White House sidewalk, qualified as a valid revocation

of the previously issued permit under § 7.96(g)(6).  To the contrary, the Government apparently

agrees that there was no revocation.  *See* Br. for Appellee 17 (arguing that the absence of a

permit for the White House sidewalk resulted "not because a NPS official revoked the permit").

The evidence shows that the written permit, issued just days before Ms. Sheehan's arrest,

did not purport to revoke any previously existing permits, nor did it recite any reason for a

revocation, as required by § 7.96(g)(6).  *See* Gov't Ex. 1 (Br. for Appellant attachment 3).  Nor

was Ms. Sheehan or the vast majority of others who were assembled at the White House

sidewalk ever notified of a revocation of the permit.  Tr. 18, Nov. 17, 2005.  To the contrary, the

conduct of the Park Police on the day of Ms. Sheehan's arrest created a permissive and festive

atmosphere that left those at the White House with no indication that there was no permit for them to be there.  *See* Br. for Appellant 24-25.

Having presented no evidence that the original permit to demonstrate on the White House sidewalk was properly revoked, the Government failed to present sufficient evidence to show, beyond a reasonable doubt, that Ms. Sheehan was demonstrating "without a permit" on the day of her arrest.  The conviction should therefore be reversed.

## III.    The NPS Permit Requirement Is Unconstitutional.

Relying on a line of Supreme Court precedent, *see, e.g.*, *Smith v. California*, 361 U.S. 147 (1959), and the materially indistinguishable decision of the Sixth Circuit in *American-Arab Antidiscrimination Committee v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005), Ms. Sheehan showed in her opening brief that the NPS permit regulation improperly imposes strict liability on any person who demonstrates "without a permit," regardless of whether the person knows whether a permit exists.  Br. for Appellant 5-10.  In reply, the Government neither addresses the Supreme Court cases on which Ms. Sheehan relied, nor distinguishes the Sixth Circuit's decision in *City of Dearborn*.  Indeed, the Government does not even dispute that the NPS regulation would violate the First Amendment if, in fact, it lacked a mental state element with respect to the existence of the permit—as indeed it does. The responses that the Government does offer mischaracterize the language of the regulation, the trial record, and relevant case law.

### A.    The Regulation Cannot Be Construed To Include A *Mens Rea* Requirement.

The Government concedes that it took the position at trial "that it was unnecessary for the United States to establish the state of the appellant's knowledge regarding the permit."  Br. for Appellee 6 n.3; *see also* Tr. 130, Nov. 17, 2005 (statement by Government counsel that "notice about the existence of the permit or lack of a permit is not an element and not a defense of this violation").  In a complete about-face, the Government now takes the position that this Court

should construe the regulation to include a *mens rea* element in order to save it from

unconstitutionality. *See* Br. for Appellee 6-10. That argument fails.

The Government's sole support for its new approach is that the regulation includes an

intent requirement with respect to the definition of "demonstration," *id.* at 7 & nn.4-5, "and,

therefore, there is no reason why the Court cannot infer a similar element with regard to the

permit," *id.* at 9. As an initial matter, contrary to the Government's contention, the regulation

does not include an intent requirement with respect to the definition of "demonstration." That

definition provides:

> "The term 'demonstrations' includes demonstrations, picketing, speechmaking,
> marching, holding vigils or religious services and all other like forms of conduct which
> involve the communication or expression of views or grievances, engaged in by one or
> more persons, the conduct of which has the *effect,* intent *or propensity* to draw a crowd or
> onlookers. The term does not include casual park use by visitors or tourists which does
> not have an intent *or propensity* to attract a crowd or onlookers."

36 C.F.R. § 7.96(g)(1)(i) (emphasis added). The first sentence of the definition makes clear that

certain conduct constitutes "demonstrating" even if it has only the "effect" *or* "propensity" to

attract onlookers—no "intent" is required. The second sentence, on which the Government

principally relies, is no different: casual park use by visitors or tourists which does not have an

"intent" to attract onlookers, but which does have the "propensity" to do so, is not excluded from

the definition. Thus, the regulation does not require that a person "intend" to attract a crowd or

onlookers in order for that person to be "demonstrating."

Moreover, even if the regulation included an intent requirement with respect to the

definition of "demonstration," that would not support the Government's inference that the

regulation requires a similar mental state with respect to the existence of the permit. As the

Supreme Court has observed, "[c]lear analysis requires that the question of the kind of

culpability required to establish the commission of an offense be faced separately with respect to

12

each material element of the crime." *United States v. Bailey*, 444 U.S. 394, 406 (1980) (citation

omitted); *see also Staples v. United States*, 511 U.S. 600, 609 (1994) (the determination of the

mental state associated with one element "suggest[ed] no conclusion" concerning the mental

state associated with another element); *Liparota v. United States*, 471 U.S. 419, 423 n.5 (1985)

("The required mental state may of course be different for different elements of a crime."). This

means that, here, whether a demonstrator must know he or she was demonstrating "without a

permit" in order to violate the regulation is independent of whether he or she must have an intent

to "demonstrate."

In this case, the regulation is unambiguous that a demonstrator need not be aware of the

existence or lack of a permit in order to violate the regulation.[6] Most notably, the regulation

imposes liability on one who demonstrates without a permit, even if the permit requirement was

triggered only because the person (intentionally or not) joined or was joined by 24 or more other

people. *See* 36 C.F.R. § 7.96(g)(2)(i). In such a case, the person is quite unlikely to know

whether any of his fellow demonstrators had obtained a permit, yet the regulation nevertheless

imposes liability. Br. for Appellant 9-10.[7] The applicability of the regulation in this manner

indicates the drafters' intent to impose strict liability. The NPS permit rule thus cannot be read

---

[6] The Court is not free to read the regulation as including a *mens rea* requirement—even to save
the regulation from unconstitutionality—if the language of the regulation unambiguously
imposes strict liability, as is the case here. *See United States v. Taylor*, 937 F.2d 676, 681-82
(D.C. Cir. 1991) (declining to apply presumption against strict liability to unambiguous rule);
*United States v. Nofziger*, 878 F.2d 442, 446, 452 (D.C. Cir. 1989) (applying presumption of
*mens rea* only after finding the statute ambiguous).

[7] The Government contends that the regulation would not apply to "two groups coincidentally
demonstrating next to each other and triggering the permit requirement," but would apply only
where two groups of fewer than 25 demonstrators "are in fact related to each other." Br. for
Appellee 10. This purported requirement does not appear in the language of the regulation,
which by its plain text would quite obviously seek to impose liability if all together there were
more than 25 people demonstrating without a valid permit. 36 C.F.R. § 7.96(g)(2)(i).

to require the Government to prove that a defendant knows he or she lacked a permit to secure a

conviction under the regulation.

  **B.**  **The Government Fails To Refute That The Absence Of A *Mens Rea* Element Renders The NPS Permit Regulation Unconstitutional.**

  Relying heavily on its erroneous contention that the NPS regulation may be construed to

include a *mens rea* element, the Government offers little to dispute Ms. Sheehan's argument that,

absent such an element, the regulation violates the First Amendment.

  The Government points to decisions by the D.C. Circuit upholding the NPS permit

requirement against various First Amendment challenges. Br. for Appellee 7-8. But none of

these cases discusses the strict liability question presented in this case. *See United States v.

Cinca*, 56 F.3d 1409, 1414 n.12 (D.C Cir. 1995); *United States v. Musser*, 873 F.2d 1513, 1517-

18 (D.C. Cir. 1989); *Quaker Action Group v. Morton*, 516 F.2d 717 (D.C. Cir. 1975). Indeed,

one of those cases does not even address the same regulation that is at issue here. *Musser*, 873

F.2d at 1517-18 (upholding regulation of unattended signs against First Amendment challenge).

These cases thus do not foreclose Ms. Sheehan's constitutional challenge to the imposition of

strict liability under the NPS permit requirement.

  The Government's attempts to distinguish the Sixth Circuit's decision in *City of

Dearborn* likewise fail. First, the Government contends that *City of Dearborn* is different

because the ordinance at issue there was not subject to previous judicial scrutiny. Br. for

Appellee 9 n.6. As noted, however, previous judicial scrutiny of the NPS regulation has not

addressed the question presented here. Second, the Government argues that in this case Ms.

Sheehan must have known there was no permit because the police warnings so informed her,

whereas in the Sixth Circuit case the defendant learned of the absence of a permit the next day.

*Id.* But the Magistrate Judge specifically found that there was "no testimony" regarding whether

any of the defendants knew whether there was a permit.  Tr. of Bench Ruling 10, Nov. 17, 2005.

And in any event, whether Ms. Sheehan knew in this case of the existence or lack of a permit is

irrelevant to the *facial* validity of the regulation.  *See, e.g.*, *Forsyth County*, 505 U.S. at 129

(regulation may be subject to facial invalidation even if application in the case under

consideration may be constitutionally unobjectionable).  Finally, the Government contends that

the Sixth Circuit's decision may be distinguished on the ground that the ordinance at issue there

was found to have other infirmities under the First Amendment.  *Id.*  Whether a regulation

suffers one constitutional defect is independent of whether it suffers another, however, and as the

Sixth Circuit's opinion shows, the analysis of the strict liability question is separate from the

analysis of other First Amendment issues.  *City of Dearborn*, 418 F.3d at 610-13.[8]

      The Government makes no attempt to defend the constitutionality of the NPS regulation

under the Supreme Court's decisions in *Smith* and related cases; nor does it offer any tenable

basis for distinguishing the Sixth Circuit's decision in *City of Dearborn*.  Accordingly, for the

reasons asserted in Ms. Sheehan's opening brief, the NPS permit requirement is unconstitutional

and Ms. Sheehan's conviction should be reversed.

---

[8] The Government also attempts to neutralize *City of Dearborn* by pointing to *United States v. Johnson*, 988 F. Supp. 920, 922-24 (W.D.N.C. 1997), *aff'd*, 159 F.3d 892 (4th Cir. 1998), which it describes as holding that a regulation that did not require scienter for every element of the offense did not violate the First Amendment.  *See* Br. for Appellee 6 n.3.  In fact, *Johnson* considered the *mens rea* issue only as a matter of statutory interpretation, concluding that the regulation did not include a scienter requirement with respect to every element of the offense. 988 F. Supp. at 922-23.  It then considered separately whether the regulation was a content-neutral time, place, and manner restriction and found it to be valid under the First Amendment. *Id.* at 923-24.  *Johnson* did not address the question whether the absence of a *mens rea* requirement for every element posed an independent problem under the First Amendment.

**C.    The Record Does Not Support The Government's Claim That The Trial Court Found That Ms. Sheehan Knew There Was No Permit.**

The Government concedes that "appellant correctly notes that the trial court indicated at different points during the trial that it believed that knowledge of the permit status was unnecessary." Br. for Appellee 12; *see also* Tr. 61-62, Nov. 17, 2005. The Government nevertheless contends—again, without citation to the record—that any constitutional error stemming from the strict liability nature of the offense may be overlooked in this case because the Magistrate Judge "expressly or implicitly" considered the *mens rea* issue, Br. for Appellee 6, and made a "factual finding" that Ms. Sheehan knew there was no permit, *id.* at 11. As noted, even if such a finding had been made, it would be irrelevant to Ms. Sheehan's facial constitutional challenge to the NPS regulation. *See, e.g.*, *Forsyth County*, 515 U.S. at 129. But in fact the transcript shows that the Magistrate Judge not only believed evidence of intent to be unnecessary, but also affirmatively found that "there was no testimony as to how the individual Defendants . . . knew that a permit had in fact been issued if in fact they knew about it." Tr. of Bench Ruling 10, Nov. 17, 2005. Thus, even if this Court construed the regulation to require proof of *mens rea*, the Government failed to prove that Ms. Sheehan knew there was no permit.

The Magistrate Judge did make a generalized finding that the defendants as a group were not credible when they asserted they did not hear the Park Police warnings. Judgment at 11. But it is not tenable to construe this statement as a factual finding that Ms. Sheehan knew whether there was a permit, given the Magistrate Judge's unequivocal statement that "no testimony" supported such a finding. Tr. of Bench Ruling 10, Nov. 17, 2005. Moreover, a warning that those who were demonstrating on the White House sidewalk were doing so without a permit would have meant little to one who was not herself "demonstrating." If one is legitimately just sitting and not demonstrating, one would not think one had to move in response to such a

16

warning. Finally, even if Ms. Sheehan was on notice after the issuance of the warnings that no permit existed, that would not show that she knew of the lack of a permit prior to the warnings, at the time she purportedly violated the regulation by demonstrating without a permit.[9]

**D.    The Constitutional Challenge To The Regulation Was Properly Preserved.**

The Government argues that Ms. Sheehan waived her constitutional challenge to the validity of the NPS regulation by failing to raise it prior to trial. Br. for Appellee 5-6. The record shows, however, that defense counsel repeatedly raised the question of the mental state associated with the permit requirement and repeatedly raised a First Amendment challenge to the regulation, and the responses of Government counsel and the Magistrate Judge indicated their awareness of the issues.[10]  Specifically:

---

[9] As the Government argued below, the offense defined in the NPS permit regulation is complete when those who demonstrate or join a group of demonstrators do so without a permit. That is, the offense is committed upon demonstrating without a permit, not upon demonstrating without a permit *after* being warned not to do so. *See* 36 C.F.R. § 7.96(g)(2); *see also* Tr. 122, Nov. 17, 2005 (statement of Government counsel that "the warnings are, in fact, not required under the law in order for the Defendants to be guilty of demonstrating without a permit. What the Government need[s] to prove is that there was no permit and that the Defendants willingly or voluntarily demonstrated with more than 25 people. And it is in the joining of the group that does not have the permit that constitutes the basis of the offense").

[10] The Government argues that Ms. Sheehan was required to raise this issue "prior to trial" under Rule 12(b) of the Federal Rules of Criminal Procedure. Br. for Appellee at 5-6. But Rule 12(b)(3) requires only certain enumerated objections to be raised by motion prior to trial, and the First Amendment issue in this case does not fall within the scope of that rule. The cases the Government principally relies on address only the general principle that an argument is forfeited if not advanced in the trial court—they do not apply Rule 12, and they do not require an argument to be made "prior to trial."  *See United States v. Drew*, 200 F.3d 871, 876 (D.C. Cir. 2000); *United States v. Badru*, 97 F.3d 1471, 1476 (D.C. Cir. 1996); *United States v. David*, 96 F.3d 1477, 1482 (D.C. Cir. 1996). The cases cited in the Government's footnote do apply Rule 12, but they address issues that are specifically identified in Rule 12(b)(3) as issues that must be raised by motion prior to trial. *See United States v. Weathers*, 186 F.3d 948, 951-58 (D.C. Cir. 1999) (objection to defect in indictment); *United States v. Sobin*, 56 F.3d 1423, 1427 (D.C. Cir. 1995) (motion to suppress); *United States v. Mangieri*, 694 F.2d 1270, 1282-84 (D.C. Cir. 1982) (motion to suppress). Thus, defense counsel's efforts throughout the entire proceeding below are

17

- Prior to trial, defense counsel clearly stated, and the Magistrate Judge confirmed, that Ms. Sheehan intended to challenge the constitutionality of the NPS regulation under the First Amendment. Tr. 29, Nov. 16, 2005. Government counsel responded with the same argument the Government now advances, that the regulation has been upheld as a constitutional time, place, and manner restriction. *Id.* at 33.

- At the outset of the trial, defense counsel again raised the First Amendment issue in his opening statement. *Id.* at 39-41.

- At the close of the Government's case, defense counsel moved for a judgment of acquittal, arguing among other things that Ms. Sheehan and the other defendants had no way of knowing that the permit for the White House sidewalk had been rescinded. Tr. 44-46, Nov. 17, 2005.

- Government counsel responded to the motion for acquittal by referring to circuit precedent upholding the NPS regulation as constitutional under the First Amendment and by arguing that whether the defendants knew of the existence of a permit was inapposite. *Id.* at 49-51.

- On direct examination of one of the defendants, Ms. Sheehan's co-defendant attempted to elicit the testifying defendant's intent at the time of the demonstration and argued that such evidence was necessary to determine whether the defendant had committed a crime; the Magistrate Judge sustained the Government's objection that the issue of intent was not relevant. *Id.* at 61-62.

- During closing argument, Government counsel argued that the NPS regulation was not unconstitutional under the First Amendment and that the defendants' mental state was not a defense to the charges of demonstrating without a permit. *Id.* at 121-23.

- During closing argument, defense counsel argued that Ms. Sheehan's conduct was constitutionally protected under the First Amendment, that the regulation providing for automatic grant of a requested permit after 24 hours was necessary to serve First Amendment values, and that Ms. Sheehan had no notice of the purported rescission of the permit that had been deemed granted. *Id.* at 127-28. On rebuttal, Government counsel reiterated that notice of the existence or lack of a permit is not an element of or a defense to a violation of the NPS permit regulation. *Id.* at 130.

- The Magistrate Judge considered and rejected the defendants' First Amendment claim. Judgment at 9-10.

---

relevant to show that Ms. Sheehan preserved the First Amendment issue—though, as noted in text, defense counsel *did* raise the issue initially in a preliminary statement prior to trial.

Defense counsel's efforts thus were adequate to preserve the constitutional challenge to the NPS regulation. *See, e.g.*, *United States v. Milton*, 8 F.3d 39, 45 (D.C. Cir. 1993) (holding that defendant's general claim in the trial court that the evidence was insufficient to support conviction preserved a more specific point of error, even though the specific point was never argued); *United States v. Akpan*, 407 F.3d 360, 376 (5th Cir. 2005) (holding that the defendant had preserved sentencing error under *United States v. Booker* by objecting to the district court's determination of a sentencing factor on the ground that it had not been proven at trial, even though defendant did not mention the Sixth Amendment or relevant case law); *see also United States v. Purvis*, 21 F.3d 1128, 1130 (D.C. Cir. 1994) ("[W]here the record is ambiguous we would rather err on the side of recognizing an objection that was not made with the desired specificity than rejecting one that was so made.").

For the reasons stated in Ms. Sheehan's opening brief, Supreme Court precedent and the Sixth Circuit's decision in *City of Dearborn* make clear that the regulation's imposition of strict liability on the exercise of expressive conduct violates the First Amendment. This Court should therefore hold that the NPS regulation is unconstitutional and reverse Ms. Sheehan's conviction.

## CONCLUSION

For these reasons, this Court should reverse the judgment of conviction.

Respectfully submitted,


  /s/ Jennifer M. O'Connor
David S. Cohen (D.C. Bar No. 426683)
Jennifer M. O'Connor (D.C. Bar No. 460352)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 663-6000
(202) 663-6363 (facsimile)

*Counsel for Appellant Cindy Sheehan*

Date:  August 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this brief and attachments was served by U.S. mail, first class postage prepaid, and by electronic transmission, to the person identified below on August 15, 2006.

Michael T. Truscott
Assistant United States Attorney
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530

*Counsel for the United States*

_____/s/ Jennifer M. O'Connor_____