# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 16, 2007       Decided January 11, 2008

No. 07-3002



UNITED STATES OF AMERICA,
APPELLEE

v.

CINDY SHEEHAN,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 05mj00649-17)

———

*Catherine M.A. Carroll* argued the cause for appellant. With her on the briefs were *David S. Cohen* and *Jennifer M. O'Connor.*

*Florence Y. Pan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III* and *Michael Truscott*, Assistant U.S. Attorneys.

Before: SENTELLE and ROGERS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge.*

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

2

EDWARDS, *Senior Circuit Judge*: Appellant Cindy Sheehan was arrested in September 2005 for demonstrating without a permit on the White House sidewalk during an antiwar protest. She was charged with violating 36 C.F.R. § 7.96(g)(2), a National Park Service ("NPS") regulation promulgated pursuant to the authority granted by 16 U.S.C. § 3. The regulation governs demonstrations in all park areas in the National Capital Region, including the White House sidewalk, and provides that demonstrations involving more than 25 people may be held only pursuant to a permit. Following a bench trial before a Magistrate Judge, appellant was convicted and assessed a $50 fine and a $25 administrative fee.

Appellant appealed her conviction to the District Court pursuant to 18 U.S.C. § 3402 ("an appeal of right shall lie from the judgment of the magistrate to a judge of the district court of the district in which the offense was committed") and Federal Rule of Criminal Procedure 58(g)(2). The District Court rejected appellant's arguments that the NPS regulations were unconstitutional and that the evidence was insufficient to support a conviction, and affirmed the judgment of the Magistrate Judge:

> [T]he National Park Service regulation at issue – 36 C.F.R.
> § 7.96 – does not impose strict liability and may be
> interpreted to require that an accused "knowingly"
> demonstrate without a permit. Moreover, even if the
> regulation were deemed to lack a *mens rea* element, the
> appellants waived their right to challenge the
> constitutionality of the regulation on that ground by failing
> to raise the argument below. The Court also concludes that
> the evidence was sufficient for a fair-minded and
> reasonable trier of fact to find the appellants guilty beyond
> a reasonable doubt of demonstrating without a permit in
> violation of 36 C.F.R. § 7.96.

3

*Sheehan v. United States*, No. 05-MJ-00649, 2006 WL 3756349, at *9 (D.D.C. Dec. 19, 2006).

On appeal to this court, appellant contests the District Court's judgment on five principal grounds. She asserts the following: (1) the First Amendment challenge to the NPS regulations was properly preserved at trial; (2) the NPS permit requirement is facially unconstitutional under the First Amendment, because it imposes strict liability on protected expressive conduct; (3) there is no evidence of appellant's *mens rea*, because the Government prosecuted the case on the premise that strict liability applied and the Magistrate Judge excluded evidence that addressed appellant's *mens rea*; (4) the evidence does not show that appellant was "demonstrating" within the meaning of the NPS regulations; and (5) the evidence does not show that appellant knowingly demonstrated without a permit.

We hold that appellant's facial challenge to the constitutionality of the regulations is properly before the court, but that it fails. We agree with the District Court that the NPS regulations should be construed to contain a *mens rea* requirement. We also reject appellant's claim that a valid permit existed for demonstrations on the White House sidewalk on the day of her arrest. We reverse and remand for a new trial, however, because appellant was convicted of a crime that does not exist and prevented from offering a viable defense. There is no strict liability under 36 C.F.R. § 7.96. Yet, the Magistrate Judge allowed the Government to prosecute the case against Ms. Sheehan on the erroneous premise that the disputed regulations imposed strict liability for her alleged expressive activity, and sustained the prosecutor's objections when appellant sought to advance a defense based on her knowledge and intent. As a result, appellant's conviction is based on errors of law that eliminated the prosecutor's burden to prove *mens rea* and barred the appellant from presenting a defense on that issue. We are therefore obliged to reverse and remand for a new trial.

4

## BACKGROUND

On July 20, 2005, individuals from a group called the Iraq Pledge of Resistance ("IPR") submitted an application to the NPS for a permit to hold a demonstration near the White House on September 26, 2005. The stated purpose of the demonstration was to "peaceful[ly] protest against the Iraq War and [memorialize] those killed in it." Appendix to Brief of Appellant ("App.") A22. This first permit request indicated that the location of the proposed activity was "[t]he Ellipse, Constitution Avenue between 14th and 16th Streets N.W., The Ellipse Drive (behind the White House)." *Id.*

On July 28, 2005, IPR submitted a revised application, this time designating the demonstration location as "Lafayette Square, sidewalk surrounding the park" and "White House sidewalk." *Id.* at A25. NPS took no action on the amended application. The NPS regulations governing the National Capital Region state that "[a]ll demonstration applications . . . are deemed granted, subject to all limitations and restrictions applicable to said park area, unless denied within 24 hours of receipt." 36 C.F.R. § 7.96(g)(3). Therefore, by the end of July 2005, IPR had a "deemed granted" permit to demonstrate on the White House sidewalk.

On September 22 and 23, 2005, an individual affiliated with IPR corresponded by email with NPS officials regarding details of the upcoming event. App. A28-33. In an email sent on September 23, the IPR representative indicated that the group no longer sought to include the White House sidewalk as a designated location in the demonstration permit:

> I want to communicate that we do NOT wish our permit to include the White House sidewalk. We would like to include the Ellipse and Lafayette Park, of course, as we have discussed previously, but to repeat we do not want the permit to include the White House sidewalk.

5

*Id.* at A31.  A written permit was faxed by NPS to IPR coordinators later that day.  The permit specified that the approved location of the public gathering was "The Ellipse – SE quadrant, Lafayette Park east-side."  *Id.* at A15.  The White House sidewalk was not listed on the written permit.

On September 26, 2005, appellant and four other members of an organization called Gold Star Families for Peace approached the northwest gate of the White House and requested a meeting with the President of the United States to discuss the Iraq War.  When the guard at the gate informed them that no one would meet with them, the five walked a short distance away from the gate and sat down on the White House sidewalk.  Appellant remained there for approximately one hour.  Meanwhile, more than 200 other people assembled on the White House sidewalk to protest the Iraq War.  By all accounts, these participants engaged in nonviolent conduct that included singing, chanting, and carrying signs, and their activities drew a crowd of spectators.  Around 1:30 p.m., an officer of the United States Park Police ("USPP") announced that the demonstrators were in violation of NPS regulations and instructed them to leave the area or risk arrest.  Using a megaphone amplified by the loudspeaker system on two police cars, the officer repeated the warning three times, with two to five minutes between warnings.  After the final warning, the police officers cordoned off the sidewalk and then arrested the people remaining on the sidewalk within the enclosure.  Appellant was among those arrested.

Appellant and the persons with whom she was arrested were charged with demonstrating without a permit on the White House sidewalk in violation of 36 C.F.R. § 7.96(g)(2).  On November 16 and 17, 2005, appellant and 28 other defendants were tried together before a Magistrate Judge pursuant to 18 U.S.C. § 3401.  The only evidence offered against appellant was that she was sitting on the White House sidewalk when the area

was cordoned off by USPP officers. Both the Magistrate Judge and the Government proceeded with the trial of the case on the premise that there was no *mens rea* requirement under the NPS regulations. And the Magistrate Judge prevented appellant and her co-defendants from offering evidence of their intent and knowledge. When Ms. Sheehan and the other codefendants attempted to proffer testimony about what they knew during the day of the demonstration, the prosecutor objected, arguing that intent was irrelevant, and the Magistrate Judge sustained the objection and expressly stated that intent was irrelevant. *See, e.g.*, Trial Tr. (11/17/05) at 60-62 (Testimony of Defendant Manijeh Saba); *id.* at 103 (Testimony of Defendant Cindy Sheehan). Although police officers testified about the bullhorn warnings they had given the demonstrators, appellant and other defendants were prevented from providing testimony to the contrary and were therefore prevented from advancing a defense on a principal element of the charged offense.

On November 17, 2005, the Magistrate Judge found appellant and all of her codefendants guilty of demonstrating without a permit. The Magistrate Judge subsequently filed a written decision and judgment. *United States v. Allen*, Mag. Crim. No. 05-00649 (D.D.C. Dec. 7, 2005). Appellant was assessed a $50 fine and a $25 administrative fee. Appellant then appealed her conviction to the District Court pursuant to 18 U.S.C. § 3402 and Federal Rule of Criminal Procedure 58(g)(2), but her appeal was denied. *Sheehan*, 2006 WL 3756349.

The District Court rejected appellant's argument that her conviction for violating the NPS regulations could not stand because the regulations impose strict criminal liability for conduct that is protected by the First Amendment. On this point, the District Court concluded that "inferring a requirement that an individual 'knowingly' demonstrate without a permit appears appropriate to remedy any question about the mental state required to convict someone for violating the National Park

7

Service regulation, and such a result is in harmony with the case law." *Id.* at *5. In the alternative, the District Court ruled that, even if the NPS regulations did impose strict liability, appellant waived any argument that the regulations lack a *mens rea* requirement by failing to raise the issue before or during her trial. *Id.* at *5-*6. The District Court also rejected appellant's claim that, because there were no facts showing that she was "demonstrating" as defined by the NPS regulations, the evidence against her was insufficient to prove the alleged offense. The court found that prior to her arrest, appellant was sitting on the White House sidewalk near a mass of other people, all of whom were expressing their opposition to the war in Iraq. The court concluded that, given this setting, appellant's act of sitting constituted "demonstrat[ing]" within the meaning of the regulations. *Id.* at *7-*8. Finally, the trial court rejected appellant's contention that a valid permit had been granted to IPR to demonstrate at the White House sidewalk on the day in question. The court held:

> The appellant is correct that the National Park Service regulation states that a permit application shall be deemed granted unless denied in writing within 24 hours of receipt and permits the Service to revoke a permit only in writing for the reasons enumerated in the regulation. 36 C.F.R. §§ 7.96(g)(3) & (g)(6). The regulation does not, however, cover situations in which an applicant voluntarily withdraws or cancels their request for a permit, as occurred here. To suggest that a cancelled request also be subject to the revocation procedures is not compelling, or even practical, given that the regulation allows revocation only in specified circumstances that are not applicable or relevant when an applicant voluntarily cancels his or her application.

*Id.* at *8.

8

Appellant filed a timely appeal with this court challenging the District Court's judgment.

## ANALYSIS

### I. STANDARD OF REVIEW ON APPELLANT'S FACIAL CHALLENGE TO THE NPS REGULATIONS

As a threshold matter, the parties disagree over the applicable standard of review covering appellant's claim that the NPS regulations are facially unconstitutional. The Government argues that the plain error standard under Federal Rule of Criminal Procedure 52(b) applies, because appellant forfeited her claim by not raising it with sufficient specificity at trial. Appellant contends that the issue is subject to *de novo* review by this court, because it was raised and preserved below.

"No procedural principle is more familiar . . . than that a . . . right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States*, 321 U.S. 414, 444 (1944). When an appellant fails to clearly raise an issue at trial, the District Court Judge is deprived of the opportunity to consider it. *See, e.g., United States v. Thomas*, 896 F.2d 589, 591 (D.C. Cir. 1990).

> [Objections] should be timely, specific, and renewed, when the court's initial ruling, correct when made, is proved erroneous in the light of subsequent evidence. The rationale for these requirements includes importantly the need for a record, developed by adversary processes, on which appellate consideration and resolution can safely proceed.

*United States v. Lewis*, 433 F.2d 1146, 1152 (D.C. Cir. 1970) (internal quotation marks and footnotes omitted); *see also Graham v. Davis*, 880 F.2d 1414, 1419-20 (D.C. Cir. 1989).

9

Whether an issue has been properly raised and preserved is a matter of judgment, however, and it may require the exercise of discretion by the appellate court. For example, as the Supreme Court noted in *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), when an appellant's "legal position in the District Court . . . was consistent with the legal standard that it . . . advocates" on appeal, the reviewing court may consider the issue even though appellant's "arguments in the District Court were much less detailed than the arguments" advanced on appeal. *Id.* at 120.

During the trial in this case, in answer to a question raised by the Magistrate Judge, defense counsel indicated that appellant meant to raise a facial challenge to the NPS regulations:

> Mr. Norris [trial counsel for Ms. Sheehan]: It's clear, Your Honor, first off, there's a constitutional First Amendment right both to freedom of speech, to assemble, and to be able to address the government for grievances. So there is a First Amendment constitutional right to protest, to speak out, to speak out at the White House. It's a public area.

> The Court: So you're challenging the constitutionality of the Code of Federal Regulation.

> Mr. Norris: Yes.

Trial Tr. (11/16/05 PM) at 29. The Magistrate Judge then suggested that the facial validity of the regulations had already been decided by the court of appeals. The Judge indicated, however, that appellant could raise the issue on appeal:

> The Court: As I read [*United States v. Cinca*, 56 F.3d 1409 (D.C. Cir. 1995)], certainly our circuit appears to have not found that particular section of the [NPS regulation] wanting in terms of constitutionality, but on the other hand, you will certainly be able to make your record on that and

10

> state the record and the Court will rule on it. And if the
> Court were to rule against you and it seems to me I have no
> choice in view of the circuit decision, that you can then take
> it up to the Court of Appeals.

*Id.* at 30.

The foregoing record excerpts indicate that the Magistrate
Judge understood that appellant meant to raise a facial challenge
to the NPS regulations. Although appellant's counsel said
nothing more on the matter following his exchange with the
Magistrate Judge, he also did nothing to suggest that he meant
to abandon or waive appellant's facial challenge to the NPS
regulations. And, more importantly, the matter was fully briefed
by both parties in appellant's appeal to the District Court. In
these circumstances, there is no good reason why this court
should not address the issue.

In *Grace v. Burger*, 665 F.2d 1193 (D.C. Cir. 1981), *aff'd
in part and vacated in part*, *United States v. Grace*, 461 U.S.
171 (1983), this court was faced with a challenge to the
constitutionality of a statute that made it unlawful to parade,
stand, or move in processions or assemblages in the Supreme
Court building or grounds. The District Court dismissed the
complaint for failure to exhaust administrative remedies. We
rejected the District Court's dismissal of the case on grounds of
exhaustion and then addressed the constitutional issue even
though the District Court had not ruled on it. We noted that:

> Both parties have addressed fully the constitutionality of
> [the statute], both in this court and in the District Court.
> This is not a case, therefore, where resolution of an issue for
> the first time on appeal would cause undue surprise or
> prejudice. In addition, since appellants challenge the
> constitutionality of [the statute] on its face, the resolution of
> this issue is purely one of law, appropriate for appellate
> review. For these reasons, we believe that a remand to the

District Court, which inevitably would result in a future
appeal to this court, would be a waste of judicial resources.

665 F.2d at 1197 n.9 (internal quotation marks and citations
omitted), *aff'd in part and vacated in part, United States v.
Grace*, 461 U.S. at 175 n.4 (assuming without deciding that the
court of appeals acted properly in deciding the constitutional
issue).

As we noted in *Grace v. Burger*, "'[t]he matter of what
questions may be taken up and resolved for the first time on
appeal is one left primarily to the discretion of the courts of
appeals, to be exercised on the facts of individual cases.'" 665
F.2d at 1197 n.9 (quoting *Singleton v. Wulff*, 428 U.S. 106, 121
(1976)). It follows, *a fortiori*, that if this court has the discretion
to resolve an issue that was not addressed by the trial court, we
surely may address an issue that was raised by appellant before
the Magistrate Judge, briefed and argued by the parties during
the course of appellant's appeal to the District Court, and
decided by the District Court in an extensive written opinion.
We do so here. In the end, for the reasons discussed below, we
affirm the District Court's decision that the NPS regulations do
not impermissibly impose strict liability for protected First
Amendment activities.

## II. APPELLANT'S FACIAL CHALLENGE TO THE NPS PERMIT REQUIREMENT

Appellant was convicted of violating 36 C.F.R.
§ 7.96(g)(2), which states that "[d]emonstrations and special
events may be held only pursuant to a permit issued in
accordance with the provisions of this section." Permits are not
required for some demonstrations involving fewer than 25
people, nor are they required for demonstrations taking place in
certain park areas that are not at issue in this case. 36 C.F.R.
§ 7.96(g)(2)(i) and (ii).

12

> Under the regulations, the term "demonstrations"

> includes demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct which involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd or onlookers. This term does not include casual park use by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers.

36 C.F.R. § 7.96(g)(1)(i). And the penalty provision applicable to appellant's alleged violation states that

> [a] person convicted of violating a provision of the regulations contained in [Part 7] of this chapter . . . shall be punished by a fine as provided by law, or by imprisonment not exceeding 6 months, or both, and shall be adjudged to pay all costs of the proceedings.

36 C.F.R. § 1.3(a).

Appellant argues that because none of the applicable provisions in the regulations contains a *mens rea* element, "a person may be found guilty even when he has no knowledge as to the lack of a permit and, indeed, even where he holds a reasonable, good faith – but mistaken -- belief that a permit in fact exists." Br. for Appellant at 18. According to appellant, these provisions establish a "strict liability regime" that imposes "an unconstitutional burden on free expression." *Id.* Appellant thus contends that the District Court erred in holding to the contrary. In addressing this claim, we apply a *de novo* standard of review. *See United States v. West*, 393 F.3d 1302, 1310 (D.C. Cir. 2005) (appellate court reviews *de novo* the trial court's construction of a criminal statute); *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) ("As an issue of statutory construction, our review is de novo.").

13

Strict liability is generally disfavored in criminal law, particularly with respect to cases that implicate the First Amendment. *See, e.g., Smith v. California*, 361 U.S. 147, 150-54 (1959). It is well understood, however, that the "mere omission . . . of any mention of intent will not be construed as eliminating that element from the crimes denounced." *Morissette v. United States*, 342 U.S. 246, 263 (1952); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978). This point was reiterated in *Staples v. United States*, 511 U.S. 600 (1994), where the Supreme Court held that a statute's "silence" on the *mens rea* element "does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element." 511 U.S. at 605. The *Staples* Court importantly added that "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Id.* at 606.

We agree with the District Court that we must "presum[e] that criminal statutes and regulations contain a *mens rea* element unless otherwise clearly intimated in the language or legislative history." *Sheehan*, 2006 WL 3756349 at *4. In this case, nothing significant in the language or legislative history of the NPS regulations indicates a congressional intent to adopt a strict liability regime. The language of the regulations is at worst ambiguous, and the legislative history is silent. Furthermore, it is noteworthy that the Supreme Court has implied a mental state requirement where the legislative history of a disputed statute has provided much more evidence of congressional intent to create a strict liability regime than is evident in this case. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 73-78 (1994); *see also id.* at 80-85 (Scalia, J., dissenting). It is also significant that, unlike the situation in *American-Arab Anti-Discrimination Committee v. City of Dearborn*, 418 F.3d 600 (6th Cir. 2005), the Government here ostensibly concedes that the NPS regulations would be unconstitutional if they imposed

14

strict liability. Br. for Appellee at 31-40; *see also Sheehan,* 2006 WL 3756349 at *4.

In light of the well-established precedent covering this matter, we hold that 36 C.F.R. § 7.96(g)(2) survives appellant's facial constitutional challenge. We therefore affirm the decision of the District Court on this point:

> Although the National Park Service regulation contains no express language indicating that demonstrators must know that there is no permit before being subjected to criminal sanctions, there likewise is no language clearly evincing an intent to dispense with such a mental state, and the appellant proffered no evidence of such an intent by citing to the history of the regulation, or to any other source for that matter. Thus, following the reasoning applied in *Morissette* and its progeny, it is clear that the presumption in favor of a [*mens rea*] requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct.

*Id.* at *5 (alteration in original) (internal quotation marks and footnotes omitted). In short, the disputed NPS regulations must be read to contain a *mens rea* element. This means that individuals cannot be convicted of demonstrating without a permit unless the Government proves beyond a reasonable doubt that they had the requisite knowledge and intent to do so.

## III. THE ABSENCE OF EVIDENCE OF APPELLANT'S *MENS REA*

### A. *The Critical Errors During Appellant's Trial*

Although the NPS regulations are not facially unconstitutional for want of a *mens rea* requirement, the Government proceeded with the prosecution of appellant on the erroneous premise that the regulations imposed strict liability. As noted above, the Magistrate Judge, in response to the prosecutor's objections, prevented appellant and her

15

co-defendants from offering evidence of their intent and knowledge. In addition, when appellant's trial counsel moved for acquittal at the end of the Government's case, the prosecutor stated that "[t]he issue of whether or not the Defendants were notified of the existence or nonexistence of a permit is not apposite." Trial Tr. (11/17/05) at 50. And in her closing rebuttal, the prosecutor reiterated that "notice about the existence of the permit or lack of a permit is not an element and not a defense of this violation." *Id.* at 130; *see also id.* at 122. These arguments by the prosecutor were erroneous. Although a mistake of law on appellant's part may not have been a worthy defense, this did not relieve the prosecution of its burden to prove her *mens rea, i.e.,* what appellant knew, heard, and intended on the day in question. The Government incorrectly proceeded on the basis that *mens rea* was not an element of the offense, and successfully objected to appellant's attempts to offer evidence of her knowledge and intent.

It is also clear that the findings of the Magistrate Judge were premised on the erroneous view that the NPS regulations imposed strict liability. In his written opinion, the Magistrate Judge failed to mention any *mens rea* element when discussing the Government's burden of proof, stating instead that "[i]n order to sustain a charge of protesting without a permit, the Government must show beyond a reasonable doubt that the Defendants did not, in fact, have a permit to demonstrate on the sidewalk directly in front of the White House." *Allen,* Mag. Crim. No. 05-00649 at 4.

The Magistrate Judge committed two legal errors. First, in allowing the Government to prosecute the case against Ms. Sheehan on the erroneous premise that the disputed regulations imposed strict liability, the Magistrate Judge eliminated the prosecutor's burden of proving *mens rea.* This was a serious constitutional error: The prosecution's "burden of proving all elements of the offense charged" and obligation to "persuade the

16

factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements" arise from the Due Process Clause of the Fifth Amendment. *Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993) (internal quotation marks omitted).

Second, in preventing appellant from presenting a defense on the *mens rea* issue, the Magistrate Judge denied her the right to procedural fairness. The Supreme Court has made it clear that

> [w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. . . . [A]n essential component of procedural fairness is an opportunity to be heard.

*Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation marks and citations omitted).

Given these well-established constitutional protections, it cannot be doubted that the Magistrate Judge's rulings in this case were erroneous. During oral argument before this court, Government counsel did not contest that error was committed. Rather, the Government argued that the Magistrate Judge's errors should be excused as harmless. We disagree. The Government was allowed to prosecute appellant for a crime that does not exist, and appellant was denied "a meaningful opportunity to present a complete defense." For the reasons set forth below, we cannot hold these errors harmless.

### B. The Harmless Error Standard of Review

Federal Rule of Criminal Procedure 52(a) states that "[a]ny error . . . that does not affect substantial rights must be disregarded." Because the errors in this case involved infringements of constitutional rights, we can ignore the errors

17

as harmless only if it appears "beyond a reasonable doubt that the error[s] complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Neder v. United States*, 527 U.S. 1 (1999) (evaluating trial judge's failure to submit an element of the crime to the jury under the *Chapman* standard for constitutional error). "At all times, the burden of proving that an error was not prejudicial rests on the government." *United States v. Smart*, 98 F.3d 1379, 1390 (D.C. Cir. 1996).

## C. *Application of the Harmless Error Standard to the Facts of this Case*

As has already been indicated, the Magistrate was of the view that the NPS regulations imposed strict liability and proceeded on the basis that *mens rea* was not an element of the offense. Pursuant to this erroneous view of the law, the Magistrate Judge barred appellant from advancing a defense based on her lack of knowledge and intent. When Ms. Sheehan and other defendants attempted to proffer testimony about what they knew during the day of the demonstration, the prosecutor objected, arguing that intent was irrelevant, and the Magistrate Judge sustained the objections and expressly stated that intent was irrelevant. *See, e.g.*, Trial Tr. (11/17/05) at 103 (Testimony of Defendant Cindy Sheehan); Trial Tr. (11/17/05) at 60-62 (Testimony of Defendant Manijeh Saba). Thus, as the record makes clear, the Magistrate Judge incorrectly ruled that the NPS regulations did not contain a *mens rea* requirement and then prevented appellant from advancing a defense on this element of the charged offense.

In determining whether the Government has met its burden of demonstrating "beyond a reasonable doubt that the error[s] complained of did not contribute to the verdict obtained," *Chapman*, 386 U.S. at 24, a reviewing court invariably considers whether "(1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the

18

error." *In re Sealed Case*, 99 F.3d 1175, 1178 (D.C. Cir. 1996)
(internal quotation marks omitted). Thus, for example, an error
will be found harmless under *Chapman* "where a reviewing
court concludes beyond a reasonable doubt that [an] omitted
element [of the charged offense] was uncontested and supported
by overwhelming evidence, such that the . . . verdict would have
been the same absent the error." *Neder*, 527 U.S. at 17. None
of these caveats provides relief from the legal errors in the
instant case. First, it surely cannot be said that the case is "not
close." Indeed, it is impossible to assess the "weight" of the
evidence in this case, because appellant was prevented from
advancing a defense on her knowledge and intent. The
Magistrate Judge's erroneous legal premise might not have
resulted in reversible error if appellant had been allowed to
present a defense on her *mens rea* and the Government had been
able to demonstrate beyond a reasonable doubt that the
Magistrate Judge's failure to consider an element of the charged
offense "did not contribute to the verdict obtained." No such
showing can be made here, because the Magistrate Judge would
not allow appellant to testify on her knowledge and intent.
Second, appellant's intent is undoubtedly a central issue in this
case, because, as the Government now concedes, *mens rea* is an
element of the charged offense. And, finally, no steps were
taken to mitigate the effects of the Magistrate Judge's error. The
verdict was not rendered by a jury, so no jury instructions or
other steps were readily available to lessen the gravity of the
erroneous legal conclusion drawn by the Magistrate Judge. The
Magistrate Judge was of a clear mind that *mens rea* was not an
element of the offense and he conducted the trial and reached his
judgment accordingly. At the conclusion of the Government's
case, appellant's counsel moved for a judgment of acquittal on
the ground that the Government had failed to prove that
appellant or her codefendants "had notice that they were
violating the law." Trial Tr. (11/17/05) at 47; *see also id.* at 44-
47. The motion was denied, undoubtedly because the

19

Magistrate Judge viewed the NPS regulations as imposing strict liability.

In its arguments to this court, the Government attempted to minimize the effect of the trial errors by noting that appellant was asked at one point by the prosecutor whether she had a permit, and she responded that she "didn't know that [she] needed a permit." Trial Tr. (11/17/05) at 110. It is unclear whether this statement by appellant was intended as sarcasm, but it does not matter because the statement does not give evidence of appellant's intent or knowledge. Because of the Magistrate Judge's ruling, appellant was never allowed to testify about her intent and knowledge on the day in question. Thus, there is no evidence in the record indicating, *inter alia*, (1) whether appellant heard the police officer's bullhorn announcements and, if she did hear them, what she reasonably understood from them; (2) whether she knew that the original permit would have allowed the protestors to demonstrate on the White House sidewalk; and (3) whether she knew that the demonstration leaders had changed the permit just a few days before September 26, 2005, such that the permit no longer included the White House sidewalk as an acceptable place for demonstrating. The Magistrate Judge's written opinion occasionally refers to "the intent of the demonstrators to engage in civil disobedience." *See, e.g., Allen,* Mag. Crim. No. 05-00649 at 10. But these references are merely rhetorical, at least insofar as they relate to appellant, because she was not allowed to offer any testimony about her knowledge and intent regarding the charge of demonstrating without a permit.

When, as happened in this case, a defendant is prevented from offering crucial evidence in her own defense, it can hardly be concluded that the trial errors are harmless. "Error cannot be harmless where it prevents the defendant from providing an evidentiary basis for his defense." *United States v. Saenz,* 179 F.3d 686, 689 (9th Cir. 1999) (holding that where a trial court

20

mistakenly ruled as a matter of law that certain evidence relating to the defendant's self-defense claim was inadmissible, the error was not harmless); *United States v. Blum*, 62 F.3d 63, 69 (2d Cir. 1995) (holding that erroneously excluding testimony that supported appellant's defense was not harmless error because the defense "went to the core of the prosecution's case"); *cf. United States v. Baird*, 29 F.3d 647, 653-55 (D.C. Cir. 1994) (finding reversible error where the trial judge had erroneously excluded testimony critical to the appellant's defense).

During oral argument, Government counsel argued that the Supreme Court's holding in *Neder* supports a finding of harmless error in this case. We disagree, because the circumstances in *Neder* are quite different from appellant's case. In *Neder*, the defendant was convicted of filing false federal income tax returns and of federal mail fraud, wire fraud, and bank fraud. The trial court determined, *inter alia*, that the element of materiality with regard to the tax and bank fraud charges was a question for the judge, not the jury, and found that the evidence established that element. The Eleventh Circuit held that the trial court's failure to submit the materiality element of the tax offense to the jury was error, but that the error was harmless. The Supreme Court affirmed on these points. However, *Neder* is distinguishable from the case before us. In *Neder*, the district court did not prevent the defendant from adducing evidence on the disputed issue of materiality. The defendant was "heard" on the issue. The trial judge's error was in deciding the issue, rather than presenting it to the jury. 527 U.S. at 6-7. Moreover, the defendant in *Neder* did not contest the issue of materiality. *Id.* at 15. On this record, the *Neder* Court concluded that it was "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Id.* at 17.

21

It is clear that, despite the Court's holding that a trial error concerning the omission of an element of a charged offense can be subject to harmless error review, *Neder* does not control this case. Unlike the defendant in *Neder*, Ms. Sheehan sought to present evidence on the critical element of the charged offense, but the Magistrate Judge barred the introduction of the evidence when the prosecutor objected to its admission. The trial judge in *Neder* misperceived the law, but he did not eliminate the prosecutor's burden of proving an element of the charged offense or bar the defendant from presenting a defense on that issue. Given these differences between *Neder* and the instant case, and in consideration of the record here, we cannot hold that the Government has met its burden of proving "beyond a reasonable doubt" that the Magistrate Judge's failure to consider an element of the charged offense "did not contribute to the verdict obtained."

In light of our holding that appellant was denied an opportunity to present a defense to an element of the offense, we are unable to determine whether appellant was in fact "demonstrating" on the day in question. Nor can we determine whether the police officer's bullhorn announcements gave appellant notice that she was demonstrating on the White House sidewalk without a valid permit. These matters can be addressed if and when appellant is retried for the alleged offense that gave rise to her prosecution in this case.

## IV. THE VALIDITY OF THE FIRST PERMIT

Finally, appellant argues that her conviction should simply be reversed, with no possibility of a new trial, because, even if she was demonstrating on the day in question, a valid permit existed for demonstrations on the White House sidewalk. Appellant contends that, no later than August 1, 2005, IPR had a "deemed granted" permit to demonstrate on the White House sidewalk which was never properly revoked, so any persons who

22

demonstrated on the White House sidewalk on September 26 did so lawfully. This argument fails.

In circumstances such as these, where the holder of a permit voluntarily withdraws an existing permit and applies for a new one, there is nothing to indicate that the Government is obliged to follow the revocation procedures codified in 36 C.F.R. § 7.96(g)(6). The Government's failure to give any notification that the scope of IPR's demonstration permit was narrowed between the end of July and September 23, 2005, when a new written permit was issued to IPR, may be relevant to an assessment of appellant's knowledge and intent during the demonstration. It does not, however, indicate that a valid permit to demonstrate on the White House sidewalk existed on September 26, 2005.

## CONCLUSION

For the reasons indicated in the foregoing opinion, the judgment of the District Court is affirmed in part and reversed in part. The case is hereby remanded for a new trial.

*So ordered.*